Cotton vs. Irrigation Company, Limited.

No. 14,254.

L. COTTON VS. JENNINGS IRRIGATION COMPANY, LIMITED.

SYLLABUS.

1.  In a contract made by a rice farmer with the officers of a canal irrigating company whose canal was in process of construction, the only obligation entered into by the farmer was to pay two sacks of rice per acre "for the land irrigated," the farmer leaving himself at liberty to plant what land he pleased and to call for irrigation or not, as he might think proper. By a clause in the contract it was declared in behalf of the company that "it would use all reasonable means" to supply water. Such a clause under such circumsances has to be liberally construed in behalf of the corporation. The mere fact that the canal company failed to have had the canal completed, though it was physically possible to have done so, did not carry with it liability for damages.

2.  The putting in default in presence of an acknowledged inability to perform or in case of an absolute denial of the existence of any contract, cannot be exacted. (37 Ann. 492; 39 Ann. 586.)

APPEAL from the Fifteenth Judicial District, Parish of Calcasieu
—*Miller, J.*

Plaintiff alleged that on or about the 15th of May, 1900, he entered into a contract with the defendant company, by which the latter contracted to furnish plaintiff a sufficient amount of water through its canal and pumping plant, which, taken together with the natural rainfall, would properly flood and irrigate certain described land for the season of 1900. That during the spring of 1900, relying upon the said contract he prepared about one hundred acres of land and planted same with the best seed rice obtainable, and obtained a good stand thereon, and properly leveed the land, the levees being located by a civil engineer. That they were strong and compact and of sufficient height to thoroughly flood the land. That he did other things required of him by the contract.

That on 21st of July, 1900, he being then in need of water, made a demand upon D. E. Sweet, who was the president of defendant company, and upon C. L. Pardee, manager, which demand was made in presence of two witnesses, that the company furnish him forthwith and

immediately a sufficient amount of water to properly grow and mature said crop. That both before and after said date, he had made personal demand upon the manager and other employees for water, all of which was without avail. That if he had obtained through the canals and pumping plant of defendant an ample and sufficient supply of water at the proper season, he would have raised not less than one thousand sacks of rice at a value of $3.50 a sack, but that through the failure of defendant to furnish water, as agreed, he raised a little over three sacks per acre, resulting in a loss to him of seven hundred sacks, or twenty-four hundred and fifty dollars. That he called upon defendant for an arbitration to adjust the damages, but the request was ignored. He prayed for judgment for the amount stated.

The defendant, after pleading the general issue, specially denied that C. L. Pardee was authorized to enter into a contract with plaintiff, as alleged, and if any such contract was attempted, which it denied, it was not its contract.

It averred, contingently, that at the time the contract was alleged to have been executed, its irrigation canal was a long distance from plaintiff's farm and not yet completed; that plaintiff knew it could only supply water through said canal, and that its completion to his farm in time to flood the crop of 1900 was very uncertain; that prior to the 15th of May, 1900, plaintiff was preparing his ground and planting his rice crop; that in fact defendant was in the act of extending its canal in the direction of plaintiff's farm and used all possible means to complete it in time for the irrigation of the crop of 1900, but that heavy and long-continued rains at a season very unusual retarded the work, so that the canal could not be completed in time.

That it had been at all times impossible for defendant to irrigate the farm of plaintiff, and he well knew the fact both before and after the 15th of May, 1900.

Plaintiff filed a plea of estoppel on the part of the defendant to contest the authority of Pardee to execute the contract, *first,* because of its allegations that it attempted to comply with it, and, *second,* because of furnishing water and collecting rent from other parties and other contracts signed by Pardee as manager, the defendant held him out to the public as being vested with all the authority incident to making such contract; *third,* because when notified of the contract, it stood silent, did not deny the authority, but promised to furnish water in accord-

ance therewith, and subsequently promised to settle all damages occasioned by failure to furnish water.

The plaintiff introduced in evidence the instrument on which his suit was based. It bears date the 15th of May, 1900. It is signed "L. Cotton, per F. Cotton," and "Jennings Irrigation Company, Ltd., C. L. Pardee, Manager." Pardee declared himself in the body of the act as being the duly authorized manager of the company, and on its behalf (as the party of the first part) agreed and bound itself to maintain a pumping plant and irrigating canals as now (then) located in Calcasieu Parish, and agreed to furnish a quantity of water and to use all reasonable means to supply through its said pumping plant canals and laterals an amount of water which, together with the natural rainfall, will be sufficient to irrigate lands described in this contract, but is not to be held liable for any damage that may be caused by its failure to get a sufficient supply of water from Bayou Nez Piqué, for accidents to machinery, nor other failures or accidents over which they had no control, but shall only be bound to make all repairs necessary with reasonable dispatch.

In the instrument declared upon there is a blank left unfilled as to the number of acres which the plaintiff is to plant or to cause to be planted, the agreement reading: "Said party of the second part (plaintiff) agrees to plant or cause to be planted on the S. E. ¼ Section 36, Township 8, R'g 4 W. La. Mer., at least —— acres each season thereafter until ——."

The plaintiff agreed that "he would construct, maintain, carefully watch and keep in the best of repair and condition such levees, lead ditches and drains as are necessary for the safe and economical cultivation of rice on the land described."

It was stipulated in the agreement that whenever the plaintiff should desire to water his lands, as provided therein, he should give to the defendant at least ten days' notice before the water was to be turned on, stating as near as possible the number of acres he wished to irrigate; that defendant was not to irrigate every part of the land described at once, but to proceed with the flooding as rapidly as possible.

*McCoy & Moss,* for Plaintiff, Appellee.

*Cline & Cline,* for Defendant, Appellant.

The ·opinion of the court was delivered by

NICHOLLS, C. J. The first defense urged is that Pardee, who signed the contract on behalf of .the defendant company which was declared on, was not authorized to do so. The plaintiff introduced testimony showing that several other contracts were executed by him with other parties, and that the defendant made settlements with the rice planters with whom they were made. Plaintiff himself testified that when he notified the president of the company that he needed water, the latter raised no question as to the non-existence of the contract, but in the presence of two other persons (who testified to the same effect) answered "all right." That later when he made a proposition to compromise his claim, the president and members of the board of trustees met together the same day and at that meeting (though the proposition was not accepted) there was nothing said looking to a repudiation of Pardee's action in making the contract. The president of the company, as a witness on the stand, admitted having been notified by the plaintiff to furnish water. His version of the interview differs from that of the witnesses testifying to the same only as to the answer which he made on that occasion. His testimony on that subject was: "Mr. Cotton came in with two witnesses and served notice on me—was ready for water— would be in ten days—and I made the remark, ' all right'—we will get it to you just as soon as we can." He testified that the first intimation he had as to the plaintiff's claiming to have a "contract" with the company for irrigating was the day he was so notified; that he told the plaintiff several times that "the company was not making contracts, especially west of Grand Marais"; that they (the farmers) could see what was to be done to get the water to them, and they would have to take their chances." Asked on cross-examination whether he had on receiving notice to furnish water denied the authority of Mr. Pardee to make the contract, he answered that "he did not know that he did," and asked whether there was anything said between plaintiff and himself about recognizing any written contract which plaintiff claimed he had entered into with the company, he answered "he did not think there was." He denied having made settlements with other parties on the basis of their having "contracts" with them; he dealt with parties as he had done the year before, upon merely verbal agreements; that ·if the company furnished the water they would pay two sacks to the acre; if it did not furnish the water, of course it would not collect rent. These parties, as witnesses, testified that the settlements with

them were made as compromise settlements. The company was not paid at the full rate of two sacks per acre, but they paid one-fifth on account of "not getting the water *quite early enough* to make a good crop." The compromise was made with Captain Sweet, the president. "No contract was produced as the reason for collecting rent."

The next defense is that the company made no absolute contracts with anyone in the neighborhood of the Grand Marias to furnish water for irrigating purposes; that all that the company undertook was to irrigate the farmers' crops for 1900, should matters get into position such as to enable it to do so; should they be able to and did irrigate it was to be paid two sacks of rice per acre for *the land irrigated*. Defendant denied it ever entered into any legal obligation to have its canal ready; the company simply promised to make reasonable exertions to complete it. It contended it did make such exertions, but that the wet season of 1900 prevented it from accomplishing more than it did.

The third defense was that if the defendant was contingently liable it was not placed in default. Our attention is called in this respect to the fact that plaintiff was under obligations (if the contract was binding) to himself construct the lead ditches to and over his land, and he never did so; that he was therefore never ready and had never placed himself in position to receive water from the defendant.

Article 1913 of the Code declares that in commutative contracts where the reciprocal obligations are to be performed at the same time or one immediately after the other, the party who wishes to put the other in·default must, at the time and place expressed in, or implied by the agreement, offer or perform as the contract requires that which on his part was to be performed, otherwise the opposite party will not be legally put in default.

We are not prepared to say that a mere preliminary notice by the plaintiff to the defendant that he needed water; that he would be ready to receive it in ten days, and that defendant must furnish it at that time, would have been a compliance with the law as to place defendant in default, but before reaching that point the question arises whether a putting in default could have been exacted in this case. In the first place it is shown under the evidence that defendant was not in a position to have been able to comply with the demand and in the next place it denied absolutely any obligation on its part to furnish water

Cotton vs. Irrigation Company, Limited.

to the plaintiff, under the circumstances. While it was right and proper for plaintiff to have made a demand for the water, we do not think in view of the fact that defendant was never in fact in a position to supply it, that defendant can set up the want of a strict putting in default. It is true that plaintiff never constructed the lead ditches, but this was obviously for the reason that it was apparent that the canal would not be completed to plaintiff's farm so as to make the ditches necessary.

Had occasion called for the same, they would unquestionably have been dug. The evidence shows it would have taken very little time to have prepared them. We may say here incidentally that when Article 1913 speaks of the party who desires to place the other in default being required to "himself perform that which was on his part required to be performed," reference is made to some act to be performed by that party in favor of the other contracting party, as a consideration for what that other was called upon to do.

We are satisfied under the evidence that defendant's canal could have been brought forward so as to have enabled it to irrigate plaintiff's land, had it made great exertions. The case was not one of *"force majeure"*; it was physically possible for defendant to have completed the canal to that point.

Defendant of course knew the usual character of the seasons in May, and later months, in lower Louisiana, and the character of the country in and around Grand Marais, and that a rainy season would be likely to retard if not actually put an end to work on that portion of the line of the canal. It was possible for it to have postponed work elsewhere and concentrated it at the Marais. Philips, however, who was the contractor for the work, and one of the directors of the company, and also a rice farmer in the neighborhood but east of Grand Marais, used a portion of his working force to construct laterals for irrigation upon his own farm. We are not informed how many persons other than plaintiff would have required or would have been afforded water, through this additional exertion, which evidently called for heavier outlay. So far as the record discloses plaintiff was the only party (and he only contingently) interested in that matter, and that fact calls to special attention the wording of the instrument upon which he has declared. By it the defendant was to be paid two sacks of rice "for the land irrigated." Plaintiff did not bind himself to plant any particular

number of acres of rice, nor of those planted did he bind himself to have any part of the same irrigated by the defendant. He was foot loose to take the chances on a successful "providence" crop, and to abstain if he thought proper from making any demand whatever upon the defendant. The defendant was not in position to require him either to plant or to irrigate any given number of acres. Had defendant pushed the work forward to meet its alleged obligation to do so under plaintiff's contract, it might well be that on reaching the place plaintiff might declare that he needed no water and either make no demand for the same or a demand for an insignificant amount. There was no *aggregatio mentium* as to the land to be planted and to be irrigated. The thing in respect to which the contract was made was not fixed and determined. Under plaintiff's construction of it, there was no equality or mutuality of obligation. In construing the contract we must look at the circumstances under which it was made. At its date the canal was over a mile away from plaintiff's farm, with great uncertainty as to when and how far it would be extended that summer beyond the point it had then reached. We have no idea when plaintiff gave notice to the defendant that he needed the water and he must prepare to furnish it in ten days, that he expected this demand would or could be complied with. So far as the record discloses, he made no demand for any specific supply at that time. He testified that he told him (the president of the company), "I am here—I want water, and I want it bad, and as the contract provided for ten days, I want you to get ready for it. I need it bad." We may say here that the evidence shows that plaintiff was preparing to make a crop long before the date of this contract—as far back as January.

An examination of the evidence causes us to reach the conclusion that Pardee, who signed that contract, had been in the habit of *calling* himself the "manager" of the company (though he was not such in fact), and the president of the company was aware of his doing so; that he was not aware, however, that he had made the contract of the character such as plaintiff claimed his to be; that Pardee was not authorized to make contracts binding the company as to completing its canal up to a particular place at any particular time; that if he was authorized to make contracts at all, it was limited to making contingent contracts and fixing the price of irrigation; that the plaintiff was not aware when his own particular contract was signed of the existence

or terms of the contracts which he introduced in evidence which were executed by Pardee with other parties; that the president of the company had not seen the contract on which plaintiff declares at the time that the latter called for water. Considering this matter under all its surounding circumstances and assuming that the defendant company by not expressly repudiating the authority of Pardee to make this particular contract at the time plaintiff made a demand for water, became committed to the recognition of Pardee's authority, and assuming that under this contract the company was obligated towards plaintiff to make reasonable exertions for completing the canal to his farm, that clause we think should be construed very liberally in defendant's favor. We do not think that it was called upon to go to unreasonable additional expense to meet mere possible demands to be made upon a single contract and one so uncertain in its terms as that which plaintiff held.

We think that both parties looked to and contemplated the possibility of non-completion of the canal in time for the irrigation of the crop of 1900, and the actual contractual relations of the parties were based contingently upon the canal reaching plaintiff's farm. We do not think it can be said under the circumstances of this case that the defendant company failed in "using all reasonable means" to furnish the plaintiff with water; that he came under legal liability to plaintiff for not using greater means than it did. Under that view of the rights and obligations of parties the judgment appealed from is erroneous and it must be reversed.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff's demand be rejected and his suit dismissed with costs in both courts.