**BEDFORD *vs.* URQUHART ET AL.**

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF
ORLEANS.

When parties litigating in respect to their several and separate rights to
certain property, trace their titles to one common source, neither of them
is at liberty to deny the title of their common author or original vendor.

So when it is shown by the pleadings or evidence of a cause, that both
plaintiff, defendants and warrantors claim under the same title, neither
will be permitted to attack it.

So in a petitory action, when the last warrantor cited sets up no title,
but pleads a general denial, the plaintiff may show by legal evidence that
the former derives his title from the same common source, and is forbidden
to attack it.

In a petitory action, the plaintiff is entitled to the use of any legal evi-
dence or means by which he may render valid the title offered in support
of his claim.

This is a petitory action, in which the plaintiff claims title
to one moiety of a lot of ground in the city of New-Orleans,
which is in possession of the defendant Urquhart.

The plaintiff alleges that his mother died in 1809, and at
the time of the dissolution of the marriage, his father was
the owner, and in possession of the lot in question, which
was acquired during the marriage and continuance of the
community of acquests and gains, " from Francisco Ramon

EASTERN DIST.
*April*, 1835.

BEDFORD
*vs.*
URQUHART
ET AL

Canas, *attorney in fact* of Martin de la Madrid, by authentic act passed before a notary, the 21st October, 1806, as appears from the copy hereto annexed." The power of attorney did not accompany the act and was not produced. He further alleges, that at his mother's death, he, as sole heir, was entitled to one-half of the property acquired during marriage, but that no inventory or partition of said property was ever made as required by law. That in 1813, his father made a cession of his property to his creditors, including that now claimed, which was sold by the syndics of the creditors, and purchased by Harrod & Ogdens, and an act of sale passed to them before John Lynd, notary public, on the 11th August, 1813. That the defendant, Urquhart, is now in possession by a title unknown, but which he believes to be derived from the vendees of the syndics. That said sale was made in prejudice of his rights (he, plaintiff, being a minor and not represented or party to it) and is null and void as regards him, and he is entitled to recover one-half of said property; he prays for judgment and partition of the lot claimed.

Urquhart and wife answered, averring that the community between Bedford and wife was insolvent at its dissolution, and its debts still due and unpaid; that the action is prescribed; but if maintained, the defendants are entitled to remuneration for valuable improvements made on the disputed premises; they aver they purchased from Gilly & Prior by public act, dated 11th June, 1819, with all the appurtenances and improvements thereon, together with all the rights and actions possessed by said Gilly & Prior, whom they call in warranty to defend the title, and in case of eviction pray for judgment against them. The heirs and legal representatives of J. B. Gilly, late of the firm of Gilly & Prior, answered, and averred that the said firm purchased the lot in question of Stephen Henderson, by public act dated the 24th August and 24th September, 1814, with the buildings and improvements thereon. They cite Henderson in warranty to defend; and in case of eviction, pray judgment against him.

Henderson pleaded a general denial, and averred that he purchased the premises from Harrod & Ogdens, by public act,

EASTERN DIST.
April, 1835.

BEDFORD
vs.
URQUHART
ET AL.

dated the 8th March, 1814. That said firm was composed of C. Harrod, Peter V. Ogden, since dead, leaving a son and only heir, residing with his mother, and G. M. Ogden, also dead, but leaving an heir, all residing in New-Orleans; that Harrod and the heirs of the two Ogdens are bound jointly and severally to defend this suit, and pay such judgment as may be obtained against him, and he calls them in warranty accordingly. The defendants and warrantors as above, annexed the titles under which they held respectively to their answers.

The heir of G. M. Ogden answered, denying any liability; that she was a minor, and could not accept her father's succession; that it was insolvent, and she had never received any thing from it.

The heir of P. V. Ogden pleaded a general denial, and denied specially that the plaintiff ever accepted the succession of his ancestor, as alleged by him.

Harrod denied that he sold the property to Henderson, and was not liable in warranty. In answer to the petition, he denied generally all the allegations in it; and specially, that the plaintiff had any title to the property in question.

The plaintiff offered in evidence, subject to all legal exceptions, the act of sale from the syndics of Bedford to Harrod and Ogdens, of the property claimed, dated the eleventh of August, 1813.

On the trial, the defendant's counsel moved for a non-suit, on the ground that the plaintiff had not shown a sufficient title to enable him to recover, or to put the defendants on proof of theirs, according to the Code of Practice, art. 44.

The plaintiff relied on the sale to his ancestor in 1806, by Canas, attorney in fact of Martin de la Madrid, and the possession of the defendants under the sale from the syndics of Bedford.

The parish judge decided, that as no power of attorney accompanied the sale made by Canas, as attorney in fact of Martin de la Madrid to Bedford, nor was referred to in it, that its existence is not shown; that until such power be shown, there is no sale proved; and that, therefore, the plaintiff does

EASTERN DIST.
*April,* 1835.

BEDFORD
*vs.*
URQUHART
ET AL.

not make out his title in the words of the law; and not doing so, the possessor must be discharged from the demand. *Code of Practice,* 44.

The plaintiff's demand was dismissed, and he appealed.

*Buchanan* and *Culbertson,* for the plaintiff.

1. The judgment appealed from is erroneous, inasmuch as the plaintiff showed a good title to the property described in the petition.

2. The claim of the appellant to his mother's portion of said property has never been legally divested.

3. The court below erred in requiring the production of the procuration from Martin de la Madrid to Canas.

4. The evidence introduced, shows that the defendants hold the property, by virtue of the same title exhibited by the plaintiff.

5. Supposing that the production of the procuration from Madrid to Canas would be necessary under certain circumstances, the defendants, in this action, who possess under the same title, cannot attack the plaintiff's title for want of such production.

*Eustis, Rost* and *Strawbridge* for the defendants and warrantors.

1. This is a petitory action, and the plaintiff must make out a good and complete title before the defendants can be compelled to exhibit theirs, or be put on the proof of it. They have a right, in the meantime, to avail themselves of any defects in the plaintiff's title. 8 *Martin, N. S.,* 105.

2. In petitory actions, or action for the revendication of property, the plaintiff must make out a complete title, or the defendant, *whoever he is,* will be discharged. He must show title and make it out satisfactorily in all points, to entitle him to recover. *Code of Practice* 44. 9 *Martin,* 267. 10 *Ibid.,* 293.

3. The plaintiff's title is defective, because no power of attorney is shown, referred to, or accompanies the sale from Canas, as attorney in fact of De la Madrid to Bedford,

EASTERN DIST. *April,* 1835.

BEDFORD
*vs.*
URQUHART
ET AL.

Proof of agency in the sale of immoveables and slaves, must be of as high and authentic a character as the sale and title itself. The procuration or power of attorney, must be in writing, and authentic, and produced in evidence. 4 *Martin,* 564. 2 *Louisiana Reports,* 597. 3 *Ibid.,* 459.

*Magnon* and *Fourchy,* for plaintiff, in reply, contended, that the defendants could not rely on possession and compel the plaintiff alone to show title ; but that title was pleaded and the decision of the case depended on the respective titles of the parties.

2. The plaintiff has a right to show the defendant's claim under the same title with himself, and cannot attack it.

*Mathews, J.,* delivered the opinion of the court.

This is a petitory action, on which the plaintiff claims, as heir of his mother, a certain lot of ground in the city of New-Orleans, which he alleges to be in possession of the defendants. They, after pleading the general issue, insolvency of the father of the plaintiff and prescription, cited in warranty the heirs and representatives of Gilly & Prior, their vendors, who after various pleas, cited S. Henderson (under whose title their ancestors held) in warranty, who called on C. Harrod and the heirs and representatives of G. M. Ogden and P. V. Ogden to warrant and defend the title which he had obtained from the firm of Harrod & Ogdens. On behalf of the heirs of the Ogdens, special answers were made, denying that they ever inherited any property from their fathers, and Harrod's answer contains nothing more than a general denial of all facts alleged against him by the plaintiff. Under these pleadings and certain evidence, as shown by the record, the cause was submitted to the court below, which ordered and decreed that the plaintiff's demand should be dismissed with costs. From this judgment, he appealed.

Being a petitory action, the court below assumed as a legal principle, that the plaintiff was bound to make out his title, before the possessor could be disturbed or required to show any, or in the language of the forty-fourth article of the *Code*

EASTERN DIST.
*April,* 1835.

BEDFORD
*vs.*
URQUHART
ET AL.

*of Practice,* that the possessor should be discharged from the demand. This principle, as assumed, is strictly correct. But to justify the judgment of that court in the present instance, it must clearly appear that the evidences of title, adduced on the part of the claimant, show no right to the property in him. He claims as heir to the succession of his mother, and alleges that the lot in dispute, made a part of the matrimonial community existing between his parents at her death, as having been acquired during their marriage. The main document of title offered by the plaintiff is a notarial act of sale passed before P. Pedesclaux, on the 21st October, 1806. This deed purports to be a conveyance of the property in question to the father of the plaintiff, by one Martin de la Madrid, through the agency of a certain Francisco Ramon Canas. The act of procuration was not adduced, nor its absence accounted for, and on these grounds the deed was rejected by the court below, as affording no evidence of title in the ancestor of the claimant. Whether any other persons except those pretending title, immediately derived from Madrid, would be legally authorised to dispute the authority assumed by Canas, is a question, which, according to the view we have taken of the case, need not be solved.

The doctrine is now well settled, that when parties litigating in relation to their respective rights to any specified property, trace their titles to one common source, neither of them is at liberty to deny the title of their common author. In support of this, see 11 *Martin,* 714. 1 *N. S.* 577. 4 *N. S.* 402, *and* 2 *Louisiana Reports,* 209 *to* 213. The last of these cases establishes the principle, that when the fact is shown either by the pleadings or evidence of a cause, that both parties claim under the same title, neither will be permitted to attack it.

*When parties litigating in respect to their several and separate rights to certain property, trace their titles to one common source, neither of them is at liberty to deny the title of their common author, or original vendor. So, when it is shown by the pleadings or evidence of a cause, that both plaintiff, defendants and warrantors claim under the same title, nei. ther will be permitted to attack it.*

In the present case the defendants plead title and call in their warrantors to defend, &c. The ascent of titles is traced by calls in warranty, up to Harrod and Ogdens. The answer of these parties who were last cited, sets up no title as derived from any person. The question arising from this part of the cause requires a decision by which it is to be

EASTERN DIST.
*April,* 1835.

BEDFORD
*vs.*
URQUHART
ET AL.

So, in a petitory action, when the last warrantor cited, sets up no title, but pleads a general denial, the plaintiff may show by legal evidence, that the former derives his title from the same common source, and is forbidden to attack it.

In a petitory action, the plaintiff is entitled to the use of any legal evidence or means by which he may render valid the title offered in support of his claim.

ascertained whether the plaintiff may legally introduce competent evidence to show that the last defendants derived their title from a common source with him, in other words, whether he is authorised to prove in support of his claim, that they did obtain title to the property in dispute, from his father under whose title he claims.

This question we think must be answered in the affirmative. We know of no principle of law or rule of evidence which deprives a plaintiff in a petitory action from the use of any legal means by which he may render valid the title offered in support of his claim.

The pleadings carry up the titles of the defendants to Harrod & Ogdens. Whence did they derive their title? they are silent on this subject, but to give validity to that set up, on the part of the plaintiff, it became necessary for him to establish the fact, that they derived title from the same source from which his decends. This he has done by adducing a record of the proceedings in his father's insolvency, and a notarial act of sale, made by the syndics of that estate, to the defendants Harrod & Ogdens. We are of opinion, the court below erred in dismissing the claim of the plaintiff, &c.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be avoided, reversed and annulled, that the suit be reinstated and remanded for a new trial, to be proceeded in according to law, with instructions to the judge *a quo,* not to permit the defendants to dispute the title offered by the plaintiff, unless they show titles derived from a source different from that under which he claims. The appellees to pay the costs of this appeal.