<hr/>

(34 South. 454.)

No. 14,662.

ROCQUES' HEIRS et al. v. LEVECQUE'S HEIRS.*

(April 13, 1903.)

SALE BY TUTOR—VALIDITY—TITLE ACQUIRED —NOTICE OF DEFECT—ESTOPPEL —PRESCRIPTION.

1. The tutors sold the property claimed by the plaintiff heirs, who were minors, in payment, principally, of their personal indebtedness to the buyer.

<hr/>

*Rehearing denied May 11, 1903.

The buyer could not receive a valid title. All laws upon the subject are against such a purchase.

2. The price, due as it was by the tutors personally, was wanting as between the minors and the buyer. It follows, there was no title.

3. The asserted sale did not have the essential, to wit, the price.

4. The buyer must, under the law, be held to have knowledge of the defect of his title.

5. The possessor under a title void on its face, because violative of a prohibitory law, cannot claim the protection awarded by the law to purchasers who acquire on the face of the title conveying ownership.

6. A defendant cannot controvert his author's title. Each plaintiff and defendant trace their title to a common origin.

7. The prescription of five years does not cure the nullity shown; nor that of ten years, the defect in the asserted title.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Natchitoches; Charles V. Porter, Judge.

Action by the heirs of Rosa Rocques and others against the heirs of J. A. Levecque. Judgment for plaintiffs, and defendants appeal. Affirmed.

Chaplin, Chaplin & Chaplin and Jack & Fleming, for appellants. Scarborough & Carver, for appellees.

BREAUX, J. Plaintiffs seek to recover a particular portion of land, which they claim to have inherited from their mother, who in turn had inherited from her grandmother, and they also sue for a partition of the land.

The complaint is that the late Dr. J. A. Levecque, without any right, went into possession of this land in the year 1882, and that his heirs illegally claim to be its owners. Plaintiffs set up that as children (minors) at the date of sale in 1882, now of age, they are entitled to the ownership of the property. The defendants controvert plaintiffs' demand, and claim that the late Dr. Levecque, husband of one of the defendants and father of the others, bought the land in good faith in 1882 from Aubin Rocques and Marie Rocques, heirs of Marie Barbe Rocques, deceased wife of Charles N. Rocques, and from Constant Chevallier, natural tutor of the children of his marriage with Rosa Rocques, deceased, and J. C. Llorens, natural tutor of the issue of his marriage with Marie Barbe Rocques, deceased.

Marie Barbe Rocques was the wife of J.

C. Llorens. Rosa Rocques was the wife of Constant Chevallier. They were daughters of C. N. Rocques by his last wife. Plaintiffs, the Chevallier heirs, inherited from their mother, Marie Barbe Rocques. The others, the Llorens heirs, inherit from their mother, Rosa Rocques.

The sale was authorized by a family meeting, convoked on the joint application of the natural tutors, representing the interests of the minors. There is no question or dispute regarding the portion of land bought by Dr. Levecque from Aubin Rocques and Marie Rocques.

Defendants invoked good-faith possession; deny all indebtedness for rent, should they lose the suit; and they claim taxes paid by them, and value of the improvements they have added to the land. They set forth that in the year 1879 the late Dr. Levecque bought a parcel of land from Aubin and Marie Rocques, heirs of Widow C. Rocques; being the rear portion of the plantation of C. N. Rocques, on the east side of Cane river.

"That they," as alleged in their answer, "are unable to state whether that is part of the seventy-three acres;" that a survey may be necessary to determine what lands plaintiffs really claim. They plead the prescription of five years, as curing any informality touching the family meeting, and ten years as owners of a title translative of property. In the alternative, if condemned, they ask to be allowed the value of their improvements.

Defendants amended their answer by setting up that the family meeting intended to recommend the sale of land on the east side of Cane river, but that by clerical error the west bank had been written.

The procès verbal of the family meeting contains the following:

"The members did thereupon advise and say in their opinion and belief it was to the advantage and interest of the several minors that their several natural tutors do join with the major heirs in the private sale of said seventy-four acres of land for the price and sum of eight hundred dollars for the whole. They thereby fix said amount as the appraised value thereof."

It is a fact that plaintiffs, in administering their proof, went behind the sale which they attack, and under which defendants

hold, and introduced evidence of mortuaria proceedings and other acts, and in so doing developed that the grandfather, C. N. Rocques, was married to Pompare Metoyer, who bought the land in marriage in her own separate right. After her death, Rocques was married to another wife, grandmother of plaintiffs, and from whom they derive. This property of the first marriage he caused to be adjudicated to himself in the year 1848 at the price of appraisement, as if it had been community property. He thereafter rendered an account to the children of the first marriage, showing certain debts and credits. He made a will, and left the property to the children of the second marriage.

Constant Chevallier, witness for defendants, testified that a family meeting was called for the purpose of authorizing sale of the land to Dr. Levecque, and he agreed to sell him the tract of land, and pay what he (the witness, who was tutor of one of the sets of minors) and Llorens owed him, and he was to pay the balance in cash.

Mr. Alphonse Prudhomme, a witness, in answer to the following question, said:

"Q. Please refer to the memoranda on the book where Dr. Levecque credits himself with $800, price of that land, and charges against the family the debts.

"A. I will refer to page showing balance due.

"Q. You say that $800 was divided among the heirs?

"A. Eight hundred dollars, value of the land. Three hundred dollars deducted from the $800, which, I understand it, was taxes and attorney's fees, leaves $490, to be divided into four parts, and each one credited with $124.94."

This statement is based upon entries in an account book of Dr. Levecque.

Part of the debts for which the property was sold was due by the succession of Mrs. C. N. Rocques, grandmother of plaintiffs, the owner of the property at her death.

The issues as made up by the testimony are whether the proceedings are null, because of the failure of the judge to have the abstract of inventory recorded before confirming the natural tutor.

(1) That plaintiffs introduced evidence which discloses the existence of an outstanding title in a third person, and are estopped and precluded from disturbing defendants' title.

(2) Whether the original purchaser was a bona fide purchaser.

(3) Was there a misapplication of the funds by the tutors of the vendors, to the extent of affecting the validity of the sale?

The judge of the district court held, in a carefully prepared opinion, that the sale and proceedings leading up to it were not null, on the ground urged by defendants—that no abstract of inventory had been recorded before confirming the natural tutor—but held that the sale was null on another ground urged, substantially, that it was a dation en paiement of the tutors to pay their personal indebtedness with the property of their wards, to the knowledge of the buyer.

From this judgment, defendants prosecute this appeal.

The clerical error in defendants' deed, corrected by substituting "east" for "west," we think, was manifest enough; that it was sustained by the testimony; and that, properly, the oversight was removed, and the document, to that extent, was rightly remodeled to conform with the evident intention of all parties concerned.

Regarding defendants' position that plaintiffs have put themselves out of court by proving too much, we can only say that plaintiffs did not, in their great anxiety to trace their title back to a remote period, and to an author of that period, put themselves out of court, as defendants contend.

However null the title may have been originally, we do not think we should disturb the status of affairs which existed prior to the year 1850, and hold that, owing to certain nullities of that date, it was made evident in any way that plaintiffs have no title.

Moreover, a person cannot controvert the title of another under whom he claims.

"Defendant's ancestor bought from ancestors of plaintiffs. He had no other title. Neither plaintiff nor defendant can attack the title of the common author, for each trace title to the same source." Bedford v. Urquhart, 8 La. 238, 28 Am. Dec. 137.

"A person cannot controvert his immediate author's title, under whom he claims." Hughey v. Barrow, 4 La. Ann. 248.

In these cases "the only question which can be inquired into is, in which of the par-

ties is the title of their author vested?" Cotton v. Stacker, 5 La. Ann. 677.

The next point involved in this case—not necessarily, however, to arrive at a conclusion—relates to the effect growing out of the neglect of the district judge in not having required evidence of the inscription of the abstract of the minors' property in the parish where the tutor resides, as a condition precedent to the authority of the judge to make the appointment.

The intimation is thrown out by counsel for plaintiffs, in arguing this point, that the protection arising from a right of action against the negligent judge, and others to whom the negligence may be traced, affords scant protection to minors whose interest the law is solicitous to safeguard, and that in consequence this court should enforce the penalty of the nullity of the title, against whoever may be concerned—persons inter partes and third persons as well. We imagine that no one denies that, as between the parties, there is no question but that the sale is null, but as to third persons this court has held differently in a number of cases.

In view of the possibility of disposing of the case on another issue, which will not have the effect of changing our decree, we pass to the next question at issue, which requires our special attention.

The record shows that part of the proceeds of the sale was credited to the tutors personally on account of the buyer, Dr. Levecque. They personally were indebted to him for medical services rendered to different members of the respective families. It was a debt of the head and master of the community, and not a debt for which the separate property of the wife could be held. It was, to the extent of that indebtedness, somewhat of a dation en paiement. The purpose, in fact, in selling the property, was to pay the adjudicatee. The laws do not contemplate that the property of minors shall be adjudicated in this manner for the payment of the debts of their tutor. The sale is, in our view, a nullity.

We come to the question of improvements and taxes.

The tutors sought the buyer, and proposed to him a sale of the property. It was the tutors who proposed to sell to him, and not he to the tutors.

It is true that part of the debt was due for medical attention to plaintiffs' mothers in their illness. It is also true that there was a moral obligation on the part of these children, as relates to the indebtedness in question.

But however binding in foro conscientiæ, it cannot be enforced and has no binding effect in law. Yet it may be considered in determining whether or not the creditor was looking too sharply for his own. We charge here no intentional wrong of any sort. At the same time, we cannot sustain the sale. The law protecting minors' property will not permit.

It is quite true that the purchaser is not bound to look beyond the order granting the sale, unless there is patent nullity.

We have no dissent to express from the number of decisions cited by defendants' counsel.

But we think that there was patent nullity. These tutors were absolutely without right to open the estate as tutors, and sell the property for the payment of a debt, much of which was due by themselves personally—a fact of which the buyer, under the rule of construction, must be held to have had knowledge.

Defendants pleaded the prescription of five years.

The prescription of five years, as having had the effect of curing form in the judicial proceedings, has no bearing, we think, upon the issues. These nullities are absolute, and do not fall within the grasp of the prescription of five years.

The question is one of illegality, and is not limited to a mere matter of form. Defendants pleaded the prescription of ten years. The prescription of ten years is equally as inapplicable and without force here, for the reason that the price to which the minors were entitled has never been paid, and the property was disposed of by the tutors in their own interest, and for payment of a debt which the buyer knew was their (the tutors') debt personally, and not a debt of the minors.

Returning to the question of improvements and taxes claimed in reconvention, it is true that they are to be accounted for by the owner as plaintiff in a petitory action. On the other hand, the defendant is liable for

rent. This was discussed in the case of Hobson v. Peake, 44 La. Ann. 383, 10 South. 762, and the view here expressed was sustained in the cited case.

The judge of the district court held that the claim of plaintiff for rent was compensated by defendant's claim for taxes and improvement. This, we think, is substantially correct. Rent, in our view, would be due, were it not compensated as just mentioned.

The theory is that the husband of the buyer, and ancestor of her codefendant, had no title at all, and that they are, in consequence, liable for rent.

If we were to hold that rent is not due, then it would follow that the ten-year prescription pleaded covers the defect in the title.

This we cannot do, as we construe the law, and it follows that rent, also, is due, which we now hold is compensated as before mentioned.

We repeat, in substance, the buyer must be held to have known from the first of the danger there was of eviction, and this view carries with it the view that rent is due. Here it is compensated by taxes and improvement.

It is ordered, adjudged, and decreed that the judgment appealed from is affirmed.