On Rehearing
TATE, Justice ad hoc.
By this petitory action the plaintiff[1] claims title to approximately 408 acres of land situated in Section 40, T. 14 S., R. 20 E., St. Charles Parish. The principal defendants are the Manufacturers Record Publishing Company, which allegedly acquired title to the property in question by recorded deed of 1915, and the Humble Oil and Refining Company, Manufacturers’ mineral lessee.[2] (For convenience in discussion, reference to the “defendant” or to “Manufacturers” will include where indicated not only Manufacturers itself, but also those defendants whose interest derives from this defendant landowner.)
The original opinion of this court granted judgment in plaintiff’s favor, reversing the district court’s dismissal of the suit. All issues of this appeal have been reconsidered upon this rehearing.
The facts are fully stated in our former opinion and will not be reiterated except where necessary to clarify the discussion.
The rival title claims of the parties to this action stem respectively from two sales in 1910 of portions of a parent tract by Allan T. Dusenbury, the common *765 author of the titles of both plaintiff and defendants. It is unnecessary to deraign title back beyond Dusenbury’s acquisition of the parent tract at tax sale in 1908, for, where adverse claimants to property trace their titles to a common source, neither can attack the title of their common author from whom both claim. Pecot v. Prevost, 117 La. 765, 42 So. 263; Rocques’ Heirs v. Leveque’s Heirs, 110 La. 306, 34 So. 454; Bedford v. Urquhart, 8 La. 234.
Plaintiff’s ancestor in title, the Louisiana Farm Land Ltd., acquired approximately 15,000 acres of land from Dusenbury by deed dated December 15, 1910, including the following described tract in T. 14 S., R. 20 E:
“All lots or frc. Secs. 38, 39 and 40 except [certain lots or tracts not here in question],
“There is also excepted from Sections 39 and 40 approximately 440 acres previously sold to Albert Phenis, as per private act passed before William Renaudin, Notary Public, and Recorded in the Conveyance Records of St. Charles Parish, in Book-, Page-.” (Italics ours.)
The substantial issue of this appeal concerns whether the exception above italicized excepted from acquisition by plaintiff and his ancestors in title the tract of land here in dispute; or, rather, whether as plaintiff in this petitory action Blevins has borne his legal burden of proving that all or part of said tract did not fall within the exception from such acquisition of his predecessors in title.
Defendant Manufacturers, which admittedly was in possession of the disputed tract in 1943 at the institution of judicial proceedings concerning plaintiff’s claim of title thereto, contends that the disputed tract containing approximately 408 acres of land in Section 40 forms (together with 32 acres in Section 39) the tract excepted from acquisition by plaintiff’s ancestor in title as having been previously sold by Dusenbury to Phenis.
This prior deed from which Manufacturers deraigns its title was executed on March 9, 1910, before William Renaudin, Notary Public. The description in this conveyance of certain land by Dusenbury to one Albert Phenis for the sum of $442 was purportedly corrected by a correction deed between these same parties, dated April 18, 1912, and shortly thereafter also recorded in the conveyance records. By a deed of July 23, 1915, Manufacturers acquired from an intervening purchaser from Phenis the property originally sold to Phenis according to its corrected description, as follows:
"That portion of lot or fractional section 40 lying west of the section line betzveen Sections seven (7) and eight (8) above, prodziced and south of a line drawn west from a point on the center line of the Mor *767 garís. Louisiana & Texas' RR Co., said point being 600 feet North of the intersection of said railroad, with Bayou Saut D’Ours, [and that portion of lot or section thirty-nine (39) bounded on the north by the above described line on the east by the right of way of the said Morgan’s Louisiana and Texas R.R., on the South by Báyou Saut D’Ours, and on the west by section 40], all in T. 14 S., R. 20 E., Southeastern Land District of Louisiana, west of the Mississippi River, and containing Four hundred and forty-two (442) acres, more of less * * (Italics and brackets[3] added by this court.)
The italicized portion of the description is the basis of defendant’s claim of title to the disputed tract.
Primarily, the opposing parties each claim title to the property through conveyances from Dusenbury and his assignees. It should be emphasized here that there is no claim by either plaintiff or defendant to any portion of the tract by prescriptive title resulting from thirty years’ adverse possession without title, LSA-C.C. Arts. 3499, 3548, as it is conceded that neither party had possession thereof for thirty years prior to interruption by suit.
Plaintiff contends that: (a) He acquired by mesne conveyances from Louisiana Farm Land Limited whatever portion of' Section 40 this company acquired from Dusenbury by its deed of December 15, 1910, which included the property here in question since the attempted exception of property previously sold to Phenis was ineffectual as unidentifiable because the description in the prior 1910 sale by Dusenbury to Phenis was meaningless; (b) alternatively, if the Dusenbury-Phenis correction deed of 1912, recorded subsequent to Louisiana Farm Land’s acquisition from Dusenbury of his remaining interest in Section 40, can be held to affect plaintiff’s title, then that defendant’s title is limited to the property clearly and unambiguously described by such deed, namely, the 183 acre tract referred to as “Tract 2” in the pleadings and evidence (and thereas denoted on the plats incorporated in the original and present opinions of this court).
Defendant’s contrary contentions may be summarized as follows : (a) That since this is a petitory action, plaintiff may not recover on the weakness of defendant’s title —even conceding that the original Phenis deed upon which defendant’s title is based is meaningless — because his own title excepts approximately 440 acres previously sold to Phenis, which plaintiff cannot prove *769 may not have included the property here in dispute; (b) that in any event the descriptions of both the 1910 and 1912 Phenis-Dusenbury deeds describe the entire disputed area of Section 40, and, if ambiguous, by extrinsic evidence the intent of the parties to do so may be proved.
Simply stated, since there is no prescriptive title by adverse possession concerned, the primary question before us is to determine which party has title to the property in dispute. However, Blevins may not recover the property simply because defendant lacks title to it, since, in a petitory action such as the present, the plaintiff out of possession must make out his title to the property claimed and must recover upon the strength of his own title and not upon the weakness of the defendant possessor’s. Articles 43 and 44 of the Code of Practice; Albritton v. Chilers, 225 La. 900, 74 So.2d 156; Thurmon v. Hogg, 225 La. 263, 72 So.2d 500; Parham v. Maxwell, 222 La. 149, 62 So.2d 255; Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Dugas v. Powell, 197 La. 409. 1 So.2d 677; Cook v. Martin, 188 La. 1063, 178 So. 881; Smith v. Chappell, 177 La. 311, 148 So. 242.
Before discussing the respective contentions of the parties, we think it appropriate to restate some fundamental principles regarding the acquisition of title to immovables in Louisiana, subject to which all parties herein acquired their alleged interest in the lands presently in question.
In the first place, “Every transfer of immovable property must be in writing * * Article 2275 of the LSA-Civil Code. “All sales of immovable property shall be made by authentic act or under private signature * * Article 2440 of the LSA-Civil Code. In accordance therewith, it is well settled that parol evidence may not be used to establish title to immovables (Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So. 2d 879; Lemoine v. Lacour, 213 La. 109, 34 So.2d 392; Ceromi v. Harris, 187 La. 701, 175 So. 462; Ruth v. Buwe, 185 La. 204, 168 So. 776); nor, in the absence of a written instrument, may title to immovables be created by estoppel. Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635; Gibson v. Pickens, 187 La. 860, 175 So. 600. (Italics ours.)
Further, “No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated.” Article 2264 of the LSA-Civil Code. See, also, Article 2253. “All sales, contracts and judgments affecting immovable property, which shall not *771 be so recorded, shall' be utterly null and void, except between the parties thereto * * Article 2266. Under this principle, and since the famous leading case of McDuffie v. Walker, 125 La. 152, 51 So. 100, it is firmly established in our jurisprudence that a third party purchaser may rely upon the conveyance records and is not bound or barred by unrecorded claims against the property purchased, even though he has actual notice thereof gained from outside the records. Haynes v. King, 219 La. 160, 52 So.2d 531; Humphreys v. Royal, 215 La. 567, 41 So.2d 220; Chachere v. Superior Oil Co., 192 La. 193, 187 So. 321; Westwego Canal & Terminal Co. v. Pizanie, 174 La. 1068, 142 So. 691; Coyle v. Allen, 168 La. 504, 122 So. 596; Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528.
As we recently restated in Wells v. Joseph, 234 La. 780, 101 So.2d 667, 669, quoting from Martin v. Fuller, 214 La. 404, 37 So.2d 851, 856, “Unlike the rule at common law, it is the public policy of this state that in order to affect third parties, all transactions touching upon or affecting title to real or immovable property must be recorded. As stated in the case of Baker v. Atkins, 107 La. 490, 32 So. 69, 70, ‘there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record’.” [4]
Having in mind these fundamental principles regarding acquisition and proof of title in Louisiana to immovables, so strictly adhered to and founded upon our public policy and the social purpose of assuring stability of land titles and entitling purchasers and others in land transactions to rely upon the public records, we think plaintiff correctly urges that, in determining what is excepted from his acquisition by the exception clause in question, he and those in his chain of title are entitled to rely upon what the conveyance records show Phenis and those claiming from Phenis acquired from Dusenbury in 1910; and that what the conveyance records show to have been excepted from plaintiff’s acquisition cannot be enlarged or differed by extrinsic evidence contradictory thereof.
If this were not so, when many years later these inconsequential and unoccupied swamp lands became of great value through the possibility of mineral exploitation, those claiming title on the basis of the clause specifically excepting certain otherwise unidentified acreage previously sold *773 to a prior purchaser could — in violation of the public policy expressed by the above-stated principles which recognize the historic unreliability of such extrinsic hindsight or self-serving evidence — select for their own ownership such portions of the property acquired by plaintiff as indicated by [5] the vague remembrances of witnesses many years later, unrecorded and self-serving correspondence and evidence concerning alleged dealings with the property, or theoretical deductions of highly paid employees or experts as to what was allegedly intended to have been excepted, irrespective of what the recorded deeds show to have been actually previously conveyed to their own predecessor in title.
Likewise, in view of these fundamental principles, we regard as untenable defendant’s contention that the- plaintiff cannot carry his burden of proving title in this petitory action to the acreage sought in Section 40 simply because his chain of title excepts from acquisition “approximately 440 acres sold to A. Phenis” [6] and without any reference at all to what the conveyance records show to have been actually sold to Phenis. If the otherwise unidentifiable exception by itself thereby defeats plaintiff’s title to the land presently claimed by him in Section 40, it defeats his claim against a possessor to any portion of Sections 39 and 40 (for the same argument may be made that “approximately 440 acres” in Sections 39 and/or 40 is excepted from his acquisition which might include any tract sought therein so that plaintiff cannot prove his own title thereto), in *775 contravention of the legal principle noted in our original opinion that an. exception from a sale of unidentifiable property, rather than voiding the entire conveyance deed, is itself void, cf. Harrill v. Pitts, 194 La. 123, 196 So. 562.
Or, if defendant’s contention is interpreted to urge that extrinsic evidence is available to prove that the exception included more or other than what the conveyance records show to have been excepted from plaintiff’s acquisition by the previous conveyance thus specifically excepted, such contention flouts the above-summarized basic rules of Louisiana law that title to immovables may not be created by parol or other extrinsic evidence, nor written title thereto destroyed by such evidence, and that the claims of third persons who acquired property on the basis of recorded title thereto cannot he defeated by unrecorded claims or equities. For the same reason, we find inapplicable common-law jurisprudence cited to us to the effect that exception clauses per se render deeds ambiguous, so that as even against subsequent purchasers in the chain of title extrinsic evidence not of record may be offered to show what originally was conveyed and what originally was excepted.
In referring to the conveyance records to determine what land had been acquired by Albert Phenis from Dusenbury so as to he excepted from the acquisitions by plaintiff’s ancestors in title, in our original opinion we found the description in the 1910 deed to be so completely defective as to be meaningless, so that proof of what was intended to be conveyed thereby would rest the title essentially upon parol and not substantially upon the writing, in contravention of law. Cf. Lemoine v. Lacour, 213 La. 109, 34 So.2d 393. We further held that since the identity of the property excepted could not be identified as of 1910 when plaintiff’s ancestor in title acquired the property, then the exception rather than the deed itself was void. Harrill v. Pitts, 194 La. 123, 193 So. 562.
Our further consideration of this holding has not convinced us that we were in error, were we solely concerned with what plaintiff’s predecessor in title had acquired by the deed of 1910. But under our present view of the matter, and upon our reconsideration of the entire record and all acquisitions involved, we do not believe that we are called upon to decide this point, for the present plaintiff’s title stems not only from the 1910 deed but also from subsequent deeds, including that of 1917 by his immediate predecessor in title in which was specifically excepted from the acquisitions of Sections 39 and/or 40 “approximately 440 acres sold to A. Phenis.”
A third party in dealing with property is charged with knowledge revealed *777 by the recorded instruments affecting the property. Wells v. Joseph, 234 La. 780, 101 So.2d 667; Wise v. Watkins, 222 La. 493, 62 So.2d 653; Otis v. Texas Co., 153 La. 384, 96 So. 1. In the Wise case this court said with reference to a similar situation: “The defendants [herein, the plaintiff] cannot single out a single one instrument on the public records and disregard the other instruments * * *. The records as a whole must be taken into consideration and they are bound by what they reveal.” [222 La. 493, 62 So.2d 656.]
 The evidence reflects that the only recorded conveyance of lands to Albert Phenis in Sections 39 and 40 was the deed from Allan T. Dusenbury in 1910, as corrected in 1912. The conveyance records of St. Charles Parish further reflect that from Phenis through an intervening vendee the present defendant acquired by the corrected description whatever land in Sections 39 and 40 had been purchased by Phenis. As will shortly be shown, the corrected description plainly and unambiguously describes a portion of the land in Section 40 presently claimed by plaintiff. Plaintiff’s acquisition was thus subject to this previous deraignment of clearly described land of which he was put on notice by specific reference thereto in his chain of title
Plaintiff’s contention that his title stemming from the claim of his ancestor to the entire tract arising from his alleged acquisition thereof in 1910 could not be defeated or limited by his ancestor’s vendor’s subsequent execution of the correction deed in 1912 overlooks, in our opinion, that the an-cestor’s claim to the entire tract does not-arise because no property was intended, to. have been excepted by the clause specifical- ■ ly excepting the land previously: sold to. Phenis from the acquisition, but because no competent- evidence was admissible to prove what property was accepted.
Phenis’ acquisition from Dusenbury by the deed of 1910 (conceding the description therein to be meaningless) was not, as between the parties, absolutely void. By correction deed or timely action to reform an original deed, the description may be corrected as between the parties to reflect their true intent. Agurs v. Holt, 232 La. 1026, 95 So.2d 644; Haas v. Opelousas Mercantile Co., 197 La. 500, 2 So.2d 3; Reynaud v. Bullock, 195 La. 86, 196 So. 29; Broussard v. Succession of Broussard, 164 La. 913, 114 So. 834; Coleman v. Thibodaux, 119 La. 471, 44 So. 474. Such correction relates back, as between the parties, to the date of the original deed. Cf. Barret v. Hickman, La.App. 2 Cir., 3 So.2d 901, certiorari denied; 26 C.J.S. Deeds § 94, p. 854; 16 Am.Jur. Deeds Sec. 15, p. 591, Sec. 336, p. 629. Of course, as the above-cited jurisprudence specifically indicates, such deed may not be corrected to the prejudice *779 of third persons. W. B. Thompson v. McNair, 199 La. 918, 7 So.2d 184.
Under the particular facts of the present case, we are unable to say that plaintiff can claim that his own title as a third person was prejudiced by execution of the 1912 correction deed. It was executed at an unsuspicious time prior to the acquisition by his own immediate vendors and long prior to his own acquisition. He was not, nor so far as the record shows were his immediate ancestors in title ever, in possession of the property described by the corrected deed. His own acquisitions specifically excepted whatever had been sold to Albert Phenis, which by the conveyance records through an unambiguous corrected description (as we shall show shortly) could clearly be ascertained; and the property thus disclosed as excepted did not contravene or enlarge the terms of the exception clauses in plaintiff’s chain of title.
As stated earlier, the tract acquired by defendant by deed recorded in 1915, in so far as pertaining to land in Section 40, was described (in accordance with the corrected description by which Phenis acquired same) as follows: “That portion of lot or Fractional Section 40, lying west of THE SECTION LINE BETWEEN SECTIONS SEVEN (7) AND EIGHT (8) ABOVE, PRODUCED[7] and south of a line drawn west from a point on the center line of the Morgan’s Louisiana & Texas R. R. Co., said point being 600 feet north of the intersection of said railroad, with Bayou Sattt D’Ours[8] * * * and containing 442 acres, more or less[9] * * (Capitalization and italicization by this court.)
The following sketch depicts Section 40 and the lines used by the above description, as well as the tracts into which Section 40 is divided by these intersecting lines. (The acreage designations of the tracts into which Section 40 is divided by such lines were calculated by measurements made outside the conveyance records.) For convenience in discussion, we will hereafter refer to such tracts and such lines by their designations on this sketch.

*781

*783 We think the description indicated in defendant’s deed is clear and unambiguous. The only portion of Section 40 which is west of the line described in the deed and depicted on the sketch as AB and south of the line described in the deed and depicted on the sketch as CD is Tract 2.
Further, the clear preponderance of the expert testimony by surveyors — two of whom testified for plaintiff and four of whom did so as experts for defendant — in the record supports this conclusion.
The expert surveyors testifying on behalf of plaintiff clearly and unequivocally testified to this effect. Their testimony that the lines described by the deed and depicted as AB and CD should, in the absence of other direction by the deed, be projected as shown by the sketch (without terminating in the interior of Section 40 at, for example, point “E”) is completely corroborated by all defendant’s surveyors in so far as AB is concerned, and these latter witnesses assign no convincing reason why a similar principle should not be applied to CD. One of the surveyors employed as expert witnesses by defendant, when asked to describe unambiguously Tract 2 using the lines as bounds, did so identically (Tr. 1294) with the description used by defendant’s correction deed.[10]
This expert witness for defendant, corroborating testimony to this effect by plaintiff’s witnesses, stated (Tr. 1282) : “Where-ever you have a description that is complete and intelligently describes the property, the ‘acreage clause’ is the weakest point of the description and would have no *785 effect on the interpretation of that description.” Testimony to the same effect was given hy another of defendant’s experts. (Tr. 1246.)
This preponderant expert opinion testimony is in accord with our settled jurisprudence that a sale by given bounds conveys only the property within such bounds, and that acreage designations appended to such specific descriptions do not enlarge or restrict the grant described by the specific bounds. Motichek v. Perriloux, 231 La. 849, 93 So.2d 190; City of New Orleans v. Rathborne, 209 La. 93, 24 So. 2d 275; W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184; Bender v. Chew, 129 La. 849, 56 So. 1023.
In view of this jurisprudence, inapplicable are cases from common-law jurisdictions holding the acreage designation indicative of the extent of the estate conveyed, see the annotation at 153 A.L.R. 4, entitled “Relief, by way of rescission or adjustment of purchase price, for mutual mistake as to quantity of land, where contract of sale fixes compensation at a specified rate per acre or other area unit,” in suits between the parties to a sale at so much per measure, timely brought (cL LSA-C.C. Art. 2498), by a buyer to secure a diminution of the price when the quantity is found to be less than stated. Cf. LSA-C.C. Arts. 2492, 2494.[11] Cf., also, LSA-C.C. Arts. 854,[12] 2495; Comment, “The Obligation to Deliver in Sales of Land,” 1 La.Law Review 608 (1939); Note, “Sales —Sales per Measure — Sales for a Lump Sum — Sales per Aversionem,” 16 Tul.L. Rev. 641 (1942) ,[13]
*787 The contention of defendant’s surveyors that the description by which defendant acquired must be construed to contain Tracts 1, 2, and 3, in order to conform with the acreage designation is thus contrary to such jurisprudence.[14] In so far as defendant contends that the deed is ambiguous as designating the acreage conveyed thereby as “442 acres, more or less,” whereas actual measurement of Tract 2 as described therein indicates that such tract conveyed contains only 183.51 acres,[15] this contention has the demerit of suggesting that a deed clear and unambiguous on its face may, by virtue of unrecorded and extrinsic evidence,[16] be converted into an ambiguous one. To the contrary, of course, extrinsic evidence to explain a deed may be resorted to only where the deed itself is ambiguous. Article 1945 of the LSA-Civil Code, see below.
Ultimately, defendant’s arguments that plaintiff cannot prove title to any portion of the disputed tract depend upon an assumption that the description obtained from the conveyance records of the property excepted from plaintiff’s acquisition as previously sold to defendant’s ancestor in title is at least ambiguous, so that extrinsic evidence (Di Cristina v. Weiser, 215 La. 1115, 42 So. 2d 868), such as acreage evidence (Plaque-mine Oil & Development Co. v. State, 208 La. 425, 23 So.2d 171), or the alleged subsequent construction of the deed by the parties (LSA-C.C. Art. 1956, Pendelton v. McFarlane, 222 La. 569, 63 So.2d 1), may furnish a guide to its interpretation.
But while the “courts are bound to give legal effect to all such contracts according to the true intent of all the parties,” LSA-C.C. Art. 1945(2), nevertheless, such “intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.” LSA-C.C. Art. 1945(3). See, e. g., Stack v. De Soto Properties, 221 La. 384, 59 So.2d 428, cf., Doiron v. O’Bryan, 218 La. 1069, 51 So.2d 628; Weber v. H. G. Hill Stores, Inc., 210 La. 977, 29 So.2d 33. We find the property excepted from plaintiff’s title as previously conveyed to Phenis is clearly and unambiguously described by the corrected description in the title emanating from Phenis and now *789 held by defendant. The extrinsic evidence offered over plaintiff’s objection is thus inadmissible to prove that the deeds in defendant’s chain of title conveyed other or more land than the property (Tract 2) therein unambiguously described.
In summary, the plaintiff’s predecessors m title acquired all of Section 40, except that portion reflected by the conveyance records to have been sold to Albert Phenis, which we have determined to have included Tract 2, and only Tract 2.
Defendant’s alternative plea of prescriptive title by ten years’ possession under its 1915 acquisition deed, which was translative of title to the property therein described, LSA-C.C. Art. 3478, is of course limited to the property described in such deed, which we have held described and conveyed only Tract 2 of the land in controversy. Since we have already held that defendants acquired recorded title to Tract 2, it is unnecessary for us to pass upon this alternative plea.
Immediately before the argument on rehearing, the defendant-appellee Humble Oil and Refining Company in this court filed for the first time (under the apparent authority of LSA-C.C. Arts. 3464, 3465, and Code of Practice Art. 902), a plea of prescription to plaintiff’s demand for an accounting and the return of any minerals removed from any property of which plaintiff might be decreed the owner. This plea was specifically based only upon the one-year prescription of LSA-C.C. Arts. 3536-7 applicable to actions for offenses, quasi-offenses, and related actions and the three-year prescription of LSA-C.C. Art. 3538 applicable to suits upon accounts. Under these codal, articles and the jurisprudence thereunder, the prescriptions pleaded are clearly not applicable to this petitory action by an owner to recover his property and the minerals produced therefrom.
For the reasons assigned, the judgment of the trial court is affirmed, in so far as it dismissed plaintiff’s suit claiming title to Tract 2 as set forth on the plats and pleadings of this action, said Tract 2 being more particularly described as follows:
Tract No. 2: That portion of Fractional Section 40 lying West of the Section line between Section 7 and Section 8, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D’Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River, St. Charles Parish.
It is further ordered that the judgment of the trial court be and the same is hereby annulled, reversed and set aside, in so far as it dismissed plaintiff’s claim to be recognized as the owner , of Tracts 1 and *791 3, as described by the plats and pleadings herein', and as more particularly described below in our decree; and
It is further ordered that there be judgment in favor of the estate of Jacques E. Blevins, appearing through the duly qualified and authorized testamentary executrix, recognizing it to be the true and lawful owner of and as such entitled to the immediate possession, with all right, title and interest, in and to the following described property:
Tract No.-1: That portion of Fractional Section-.40. lying West of the Section line between Section 7 and Section 8, produced, and North of a line drawn West from a point on the center line of the Southern 'Pacific Railroad track, said point being '600 feet North of the intersection of said Railroad track with Bayou Saut D’Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River; St. Charles Parish.
Tract No. 3: That portion of. Fractional Section 40 lying East of the Section line between Section 7 and Section 8, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D’Ours, being'in Township 14 South, Range 20 East Southeastern Land District of Louisiana; West of the Mississippi River, St. Charles Parish.
It is further ordered that the Humble Oil and Refining Company release and relinquish its possession of the abpve described property to said owner thereof and that said Company render unto said owner a full accounting for any and all oil, gas, and other minerals which it may, at any time, have removed therefrom. It is further ordered that this cause be remanded to the lower court for a proper adjudication of the rights of the parties plaintiff in accord with this decree.
All costs of this appeal are to be paid by the defendant-appellees.
Affirmed in part: reversed in part.
HAMITER, J., concurs in part and dissents in part.
McCALEB, J., dissents in part.
HAWTHORNE, J., concurs in the decree affirming the judgment of the lower court as to the land designated and described as Tract 2; and dissents from the holding of the court in all other respects.

. The action was originally brought by Jacques E. Blevins, who died prior to the trial in the district court. By appropriate motion Margaret Lauer, his testamentary executrix, was substituted as party plaintiff, although for convenience in discussion we will hereinafter refer to Blevins as the plaintiff.

. The other defendants are claimants to mineral interests affecting the property.

. The portion of the description enclosed in brackets by this court clearly describes a small tract in Section 39 (see plat printed with original opinion), ownership of which by Manufacturers is conceded by plaintiff and which plays no further part in this opinion.

. See LSA-R.S. 9:2721, where this fundamental tenet of our property law is reiterated thusly: “No sale, contract, counter letter, lien, mortgage, judgment, surface lease * * * or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons ór third narties ununless and until filed for registry in the office of the parish recorder of the parish where the land or immovables is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.” (Italics ours.)

. The following observations are by way of illustration only and specifically without reference to the witnesses or evidence in the present proceeding. Assuming that such evidence as defendant offered here proves that Dusenbury’s intention in 1910 was to convey all of the property in dispute to Phenis, and that the reliability of such present proof is unquestioned, nevertheless, the illustrations indicate why as a matter of public policy this type of proof is not admissible over objection to prove by itself title to immovables in Louisiana.

. In the six deeds in plaintiff’s chain of title in 1910 and 1911 wherein Sections 39 and 40 (included in approximately 15,-000 acres) were conveyed, the exception is described as stated by the original conveyance by Dusenbury to plaintiff’s author in title, i. e., “There is also excepted from Sections 39 and 40 approximately 440 acres previously sold to Albert Plienis as per private act passed before William Renaudin, Notary Public, and recorded in the Conveyance Records of St. Charles Parish * * Plaintiff originally acquired in 1940 from Wisner Estates, Inc., which in 1917 (in the wording of the exception as stated in the intervening conveyances of 1913 and 1917) had acquired title in a conveyance of approximately 6,500 acres to: “All Sec. 40 and that portion of Sec. 39 North of S. P. R. R. tract except approximately 440 acres sold to A. Phenis in T. 14 S., R. 20 E.” The description in plaintiff’s acquisition, as corrected by deed in 1945, plainly included the tract here in question, but of course the self-help of this corrected description is not available in aid of plaintiff’s claim.

. The line described by the capitalization is shown on the sketch in the text as AB, and henceforth referred to as such. All surveyors agree that this line is located as shown.

. The line described by the italicized portion of the description is shown on the sketch in the text as CD. All surveyors likewise agree as to its location.

.The acreage designation refers also to land conveyed in Section 39, the description of which — the omission indicated by the asterisks above — by clearly located lines is easily ascertainable and which is not claimed by plaintiffs herein. Actual measurements on the ground indicate that the portion of Section 39 conveyed comprised 32.56 acres.

. Of. also the self-styled unambiguous and very similar description of Tract 2 given upon a similar request by another of defendant’s surveyors at Tr. 1154-55: “All that portion of Fractional Section 40 bounded on the west [east] by the Section line between Sections 7 and 8 above produced and bounded on the north by the projection of a line drawn from a point on the center line of the Morgan Louisiana and Texas R. R. Co., said point being 600 feet North of the intersection of said Railroad with Bayou Saut D’Ours.” (Exhibit TX7G1) As this witness for defendant explained his description, “In other words, Tract Number (2) includes all of that part of fractional Section (40) which is bounded on the North by the above East-West line and which is bounded on the East by the above-described North-South line.” In attempting to describe unambiguously Tracts 1, 2, and 3 in terms of the lines utilized iu the original description, this witness supplied the following description: “All that portion of Fractional Sec. 40 lying west of the section line between Sec. 7 & 9 above produced, together with that portion of Section J/0 hounded on the west by said section line between Sect. 7 & 8 above produced and bounded on the north by a line drawn west from a point on the centerline of the Morgan Louisiana and Texas R. R. Co., said point being 600 feet north of the intersection of said railroad with Bayou Saut D’Ours.” (Exhibit 7X7A1; see Tr. 1144-1148.) The emphasized words indicate what it was necessary for the witness to add to the actual description by which defendant acquired the property in order that said description describes Tracts 1, 3, and 2, rather than merely Tract 2. (Tr. 1146-7.)

. Under LSA-C.C. Arts. 2492 and 2494, assuming they might have been applicable in a suit between the parties to the original sale, the deficiency in the quantity of a sale at “so much per measure” “of a certain and limited body” does not result in a greater quantity being conveyed; the purchaser merely has the right, under certain conditions, to claim a diminution of the price, or the option to demand delivery, if practicable, of the deficiency.

. “If any one sells or alienates a piece of land, from one fixed boundary to another fixed boundary, the purchaser takes all the land between such bounds, althoxxgh it give him a greater quantity of land than is called for in his title, and though the surplus exceed the twentieth part of the quantity mentioned in his title.”

.This cited note concerns Fitzgerald v. Hyland, 199 La. 381, 6 So.2d 321, a suit between the parties to a contract to sell and buy certain real estate, wherein it is stated in summary of the Louisiana law applicable to such disputes, 6 So.2d 325: “In the absence of fraud or concealment, the rule established by the jurisprudence of this state is that, in sales where specific boundaries are given or where the sale includes property from one fixed boundary to another, the sale is per aversionem, and the seller conveys, and the buyer gets, all the property within the boundaries given, whether it be more or loss than the measure mentioned in the contract, and that, in sales where fixed boundaries are designated, such measurements and distances as may be mentioned in connection with the description must yield to the designated boundaries.”

.We likewise find to be unimpressive the suggestion that the description in the .deed is of land clearly locatable as including all of the property in dispute (Tracts X, 2, and 3) because certain surveyors went on the ground and did so locate it. The evidence indicates that such surveys were not made by an independent interpretation of this description but simply in response to directions to establish the predetermined lines.

. With the tract in Section 39 conveyed also by the description, which is measured at 32.56 acres, the actual acreage conveyed thus would be 215.07 acres, rather than “442 acres, more or less.”

. That is, the surveys and measurements of quantity conveyed by bounds indicating a lesser quantity than designated.