OVERTON, Justice.
 

 This is an appeal from a judgment, sustaining an exception of no cause or right of action, urged against a suit to annul and cancel an oil and gas lease, granted by one of the plaintiffs, Joe Woolie, in his own behalf and in behalf of his minor children to defendant.
 

 Since the exception of no cause or right of action admits as true, for the purposes of the exception, all the well-pleaded allegations of fact, set forth in the petition, it will be proper to recite the facts alleged therein, as if they were proven to be true, in so far as it is necessary to state them.
 

 The lease was granted to defendant on September 18, 1924, to exploit for oil and gas, for the term of three years, and as long thereafter as oil or gas, or -either of them, is produced from the land by the lessee. The instrument contains a provision to the effect that, if a well be not commenced on the land on or before September 18, 1925 — one year after the granting of the lease — the lease shall terminate, unless the lessee, on or before that date, pays to the lessor the sum of $800; the payment to have the effect of extending the privilege of commencing a well for an additional period of twelve months. The lease also contains two provisions, concerning defendant’s obligations under the lease, reading as follows, to wit:
 

 “1st. To deliver to the credit of the lessor, free of cost, in the pipe line to which ho may connect his wells, the equal one-eighth part of all oil produced and saved from said leased premises.
 

 “2nd. To pay the lessor two hundred dollars each year for each well producing gas only, until such time as the gas shall be utilized or sold off the premises, and at that time the royalty above named shall cease, and thereafter the grantor shall be paid one-eighth (1/8) of the value of such gas, calculated at the rate of three cents per thousand cubic feet, corrected to two pounds above atmospheric pressure, and the lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land, during the same time, by making his own connections with the wells at his own risk and expense.”
 

 Defendant drilled and completed a gas well on the leased premises on or about November 10,1925, the well having a daily potential gas flow of 4,185,920 cubic feet; but it made no further attempt to develop the property. Defendant used and marketed the gas from the well from the date of its completion up to and including July, 1931. During this pe
 
 *993
 
 riod, defendant paid plaintiff the one-eighth royalty, stipulated in the contract. The last payment, which was for July, 1931, amounted to $22.85. Since July, 1931, defendant has neither used, sold, or marketed' any gas from the well, nor has it paid plaintiffs the sum of $200 a year for the well producing, or capable of producing, gas only, during the period in which gas was not utilized or sold off the premises, as provided in the contract, which means that plaintiff has not been paid anything since July, 1931. Plaintiffs, in view of the failure of defendant to produce and market gas from the well, and in view of defendant’s failure to pay them $200 a year for the well capable of producing gas, but not operated, made repeated demands on defendant for payment, but defendant failed and refused to make payment; the allegation setting forth “the failure and refusal” reading as follows, to wit:
 

 “That defendant has
 
 neglected and refused
 
 to produce and market the gas from said property,
 
 and pay
 
 petitioners their royalty, and has
 
 neglected and refused
 
 to pay petitioners two hundred and no/100 ($200) dollars per year for each well while gas is not being used or marketed therefrom, notwithstanding repeated demands by petitioner.” (Italics supplied.)
 

 The foregoing is the chief allegation, showing the facts concerning nonpayment, and is the one in which the material facts, pertaining to nonpayment, might be expected to be more fully set forth. In making this statement, we are not unmindful of the fact that, in other allegations where reference is made to the nonpayment of the $200 a- year, stipulated in the alternate contractual provision as to royalty or rent, no mention is made of the refusal to pay, but only of the failure to pay. ' However, such references to the nonpayment do not destroy or weaken the allegation of “refusal to pay, after demand,” set forth specifically in the petition. We find, therefore, that the petition shows a refusal to pay after demand.
 

 The foregoing explanation is necessary in view of the fact that the exception of no cause or right of action rests upon the fact, and was apparently sustained thereon, that the petition fails to show that defendant was put in mora, and that a putting in mora, or default, is essential to the dissolution of a mineral lease for failure to pay royalty or rent.
 

 The petition contains no allegation that defendant was put1 in mora by either making written demand upon it or by making verbal demand upon it in the presence of two witnesses to comply with its obligations. We find it unnecessary, however, to inquire whether a formal putting in mora was necessary, as a condition precedent to the maintenance of the suit to dissolve the contract. This is so because, assuming that we should find that a putting in mora is usually necessary in such a case, nevertheless on the face of the petition, which is all that is before us, a putting in mora was not essential in this case, by reason of the refusal of defendant, when called upon to comply with its contract, to do so. The law does not expect any one to do a vain thing. A putting in mora would have been vain in the face of defendant’s refusal to comply. Boone v. Pelichet, 13 La. Ann. 203; Beck v. Fleitas, 37 La. Ann. 492, 495; Allen, Bush & West
 
 *995
 
 v. Steers, 39 La. Ann. 586, 589, 2 So. 199; Cotton v. Jennings Irrigating Co., 108 La. 4, 8, 32 So. 193.
 

 The judgment appealed from is set aside, the exception of no cause or right of action is overruled, and the case is remanded to be disposed of according to law; the costs of this appeal to be borne by defendant, and the remaining costs to abide the final decision of the case.