HAWTHORNE, Justice.
 

 Plaintiff and appellant, Sidney J. Weber, Jr., filed suit in the Civil District Court for the Parish of Orleans, alleging that the proper interpretation and construction of a certain lease entered into on June 20, 1940, between him and the defendant, H. G. Hill Stores; Inc., would entitle plaintiff to more rentals than he has been receiving thereunder, or that under his construction and interpretation he is entitled to the sum of $11,608.15 as of March 1,1945, plus the rentals which may subsequently accrue and remain unpaid. He alleges in the alternative that, in the event the court should not interpret and construe the lease as plaintiff contends it should be interpreted, the court should reform the contract of lease so as to reflect the true intentions of the parties thereto.
 

 'To plaintiff’s petition, defendant, H. G. Hill Stores, Inc., filed an exception of no cause or right of action, which was sustained by the trial court, and plaintiff’s suit was dismissed at his costs. From this judgment he has appealed to this court.
 

 Plaintiff’s petition contains the following allegations:
 

 For a period of several years prior to 1940, plaintiff had carried on informal negotiations with the defendant through its president, William E. Penick, in an effort to induce the defendant to expand its grocery business by. establishing one or more retail outlets in Baton Rouge and for this purpose to lease certain real estate from him. Pursuant to these negotiations, in October, 1939, plaintiff forwarded a draft of a proposed lease to defendant, which proposed lease was for a primary term of three years with the -right or option of renewal for an additional period of three years. In this proposed lease plaintiff agreed to lease to defendant certain property owned by him, described as a portion of Lot No. 5, all of Lot No. 6, and a portion of Lot No. 8, Square 11 or 85, Devall Town, in the City of Baton Rouge, having a width of 128 feet on Florid?. Street by a depth between parallel lines of 140 feet, thereafter referred to in
 
 his
 
 petition as
 
 the “grocery store property".
 
 This proposed lease provided that plaintiff was to erect a brick building on the property at his expense in accordance with certain specifications, and that the consideration or monthly rental for the premises was to be predicated on a percentage basis of all sales and business transacted in the grocery store during each calendar month,’ the schedule being a sum equal to 2 per cent of all sales up to, but not exceeding, $22,500 and an additional 1 per cent on all sales and business in excess of $22,500, with a minimum annual rental stipulated during the primary term of the lease of $4,200, payable $350 monthly in advance. This proposed lease provided further that, in the event it was extended beyond its primary term, the consideration for the extended term was to
 
 *982
 
 be an amount equal to 2 per cent of all sales aggregating $25,000 and an additional 1 per cent of all sales in excess of $25,000, with a minimum annual rental fixed at $4,800, payable $400 monthly in advance.
 

 In March, 1940, the defendant forwarded a revised draft of the proposed lease to plaintiff, which revised draft was not acceptable to him. Defendant accordingly on May
 
 7,
 
 1940, submitted another revised draft of the proposed lease, but all revisions of the proposed lease left unchanged the amount of monthly rentals to be paid and the .method of computation as contained in the original draft.
 

 Plaintiff and defendant finally reached an agreement to execute a formal lease to cover the “grocery store property”, the monthly consideration or rental being in exact accordance with the statement set out in the original draft, and defendant’s president, William E. Peniclc, accompanied by two other representatives of defendant, went to Baton Rouge on June 20, 1940, for the purpose of executing the lease on this property.
 

 On reaching Baton Rouge, the representatives of defendant went with plaintiff to visit and inspect the “grocery store property” to be covered by the lease. Defendant’s representative at that time expressed a desire to lease also from plaintiff a gasoline filling station, located on Lot No. 7, as well as a portion of Lot 8, Square 11 or 85, Devall Town, City of Baton Rouge, which property adjoined the “grocery store property” to be covered by the lease already agreed on. Plaintiff then advised defendant’s representative that the gasoline filling station located on Lot No. 7 was under lease from him as owner to another, at a stipulated monthly rental of $200 with an option of renewal at $225 per month. Defendant’s representative stated that a lease of that property was desired in order to avoid and avert any possible future misunderstanding or disagreement pertaining to automobile parking space and facilities in and around the building to be erected by plaintiff for use by defendant as a grocery store.
 

 Paragraphs VIII and IX of plaintiff’s petition allege:
 

 “That the ultimate and final result of the additional negotiations concerning the inclusion of Lot No. 7 and the remaining portion of Lot No. 8 in the lease
 
 was the mutual understanding reached between the parties
 
 whereby defendant agreed to lease the said filling station property at a flat monthly rental of $235.00 for the primary term of three years with an option to extend it for three additional years, the flat rental of $235.00 monthly being determined by allowing $200.00 for Lot No. 7 and the filling station situated thereon, and by allowing $35.00 for the remaining portion of Lot No. 8; and that it was the intention of petitioner and defendant, and it was agreed by them, that the additional property .referred to as the ‘filling station property’
 
 was to 'be treated as a separate unit for which separate compensation or rentals were to be
 
 
 *984
 

 pa,id,
 
 all of which will more fully show on the trial hereof.
 

 “That petitioner and defendant agreed to prepare' and execute a single contract of lease and to incorporate therein all the properties covered
 
 by the agreement reached prior to June 20, 1940,
 
 concerning the ‘grocery store property’ as well as the properties covered by the agreement reached on June 20, 1940, concerning the ‘filling station property’,
 
 but the flat monthly rental■ of $235.00 to be paid for the filling station property was to reman,n zvholly and completely disassociated zmth the calculation of monthly rentals to be paid for the grocery store property, the latter to be computed at a fixed minimum rental monthly, phis a percentage'of the gross sales of business done each month at the grocery store,
 
 as mentioned in Paragraph III hereof.” (Italics ours.)
 

 On June 20, 1940, after plaintiff and defendant’s representative reached the final agreement pertaining to the lease of the properties involved, the two parties went to the office of an attorney in Baton Rouge to have prepared, merged, and consolidated and incorporated into a single written lease all of the conditions and provisions agreed upon, or for the purpose of having the lease previously agreed upon rewritten by merely including therein Lot No.
 
 7
 
 and the remaining portion of Lot No. 8, the “filling station property”, at a flat monthly rental of $235.
 

 This contract of lease was prepared, and, before plaintiff signed it, his attorney informed him that in his, the attorney’s, opinion, the lease provided for rentáis as now alleged in plaintiff’s petition and afforded him' the protection desired. Thereupon all parties signed and executed the lease, which is attached to plaintiff’s petition.
 

 Under the terms of the lease, plaintiff immediately began construction of a grocery store building, which was subsequently occupied by defendant, and defendant forwarded monthly rent checks to plaintiff in advance in the sum of $585 each for the months of November and December, 1940, and January and February, 1941, which amount represented the monthly rental of $235 for the filling station property and $350 as the fixed monthly minimum rental covering the grocery store property. Defendant failed, to forward any check to plaintiff for the period indicated covering the percentage of gross sales from the grocery store property as provided in the lease.
 

 On March
 
 7,
 
 1941, plaintiff requested defendant by letter to furnish him with a monthly statement of the sales and busi- * ness transacted by the grocery store during the preceding four months. Pursuant to this request defendant forwarded a statement to plaintiff reflecting the grocery , sales for the, period involved, but no checks representing the percentage of the gross sales were issued or received.
 

 When plaintiff learned that defendant was deducting the sum of $585 (which amount represented the flat rental of $235
 
 *986
 
 for the filling station property and $350 minimum monthly rental from the grocery store property) from the percentage of gross sales from the grocery store each month in computing the amount of additional rental due on the percentage of the. gross sales and business transacted in the grocery store, the attention of the defendant was immediately directed to the fact that the deduction of $350 and not of $585 should be made from the gross sales in computing the amount due plaintiff on percentage, for the reason that the filling station rented at a flat amount monthly ($235) and no percentages of gross sales from the filling station property were included in the gross sales reported from the grocery business, nor could they be included under the provisions of the lease.
 

 Defendant declined to construe or to interpret the lease in accordance with this understanding, and plaintiff wrote to defendant and requested that the
 
 "lease be corrected so as to make it express truly ■and correctly the intention of the parties”.
 
 Defendant consistently and steadfástly refused to change its method of computing the .additional rentals due monthly on the percentage of gross sales, and as a result thereof plaintiff is receiving no rental whatsoever from the filling station property.
 

 Plaintiff’s petition further alleges in Paragraph XXI:
 

 “* * * that the contract dated June 20, 1940, does not. reflect any provision which can justify the construction placed upon it cpnsistently by defendant as to the payment of rentals; and that petitioner has never accepted the contract of lease with the construction placed upon it .by defendant
 
 for the reason that such interpretation does not represent the true and correct agreement or intention of the parties.”
 

 Plaintiff’s petition sets out in detail the amount claimed under the interpretation of the lease under the primary term as well as under the extended term, or from November, 1940, through February, 1945, which is the sum of $11,608.15, plus rentals which may accrue and remain unpaid.
 

 Plaintiff’s alternative plea for a reformation of the lease is set out in Paragraph XXIII of his petition, as follows:
 

 “In the alternative, and only in the event the court should not construe the lease as contended by petitioner and as outlined in the paragraph next preceding, petitioner alleges that the court should reform the contract of lease in question so as to reflect the true intention of the parties by decreeing that petitioner be entitled to monthly rentals from the defendant as indicated in the preceding paragraph and in accordance with the method of ’computation therein set forth, together with the recovery of all accrued rentals withheld.”
 

 Plaintiff’s prayer is in accordance with the allegations of his petition.
 

 The lease here involved, dated June 20, 1940, is attached to,, and made part of, plaintiff’s petition, and that section of the
 
 *988
 
 lease under which plaintiff contends that he is entitled to more rentals than he has been receiving provides:
 

 “The said Tenant agrees to pay to Lessor as hereinafter provided, a monthly calendar rental for said premises on a percentage basis of all sales and business transacted (as hereinafter defined) on the premises during each such calendar month, said monthly rental to be in accordance with the following schedule: A sum equal to Two per cent (2%) on all sales and business transacted (as hereinafter defined) on said premises during each calendar month, up to but not to exceed Twenty-two Thousand Five Hundred and No/100 Dollars ($22,-500.00), and an additional One per cent (1%) on all said sales and business transacted on said premises each such calendar month in excess of Twenty-two Thousand Five Hundred and No/100 Dollars ($22,-500.00), it being understood and agreed, however, that Tenant shall pay a minimum annual rental during the term of this lease of the sum of Seven Thousand Twenty and No/100 Dollars ($7,020.00), payable Five Hundred Eighty-five Dollars ($585.00) monthly, in advance, on the first day of each and every month during said term. Said percentage over and above the minimum rental is to be paid on or before the last day of each month subsequent to the month in which such rental accrued; provided, that in computing- the gross volume of sales, as hereinabove set forth, the sales of petroleum products, automobile accessories and other products customarily sold through service stations, made from the leased premises designated as Lot No. Seven (7) of Square No. Eleven (11), hereinabove secondly described and included in the leased premises, shall be excluded and not included in the gross volume of sales."
 

 Although plaintiff’s petition is quite lengthy; we have deemed it advisable to set forth hereinabove the pertinent allegations contained therein, for, in considering the exception of no cause or right of action filed in this case, it is well settled that the petition must be considered in its entirety, that all well-pleaded facts must be accepted as "true, and that all documents annexed to, and made part of, the petition must be considered. Johnson v. Legeai, 147 La. 92, 84 So. 505; Reisz v. Kansas City Southern R. Co., 148 La. 929, 88 So. 120; Logan v. Walker, 152 La. 880, 94 So. 430; State ex rel. Elston et al. v. Parish Democratic Executive Committee, 173 La. 844, 138 So. 857; Woolie et al. v. Carson Carbon Co., Inc., 177 La. 990, 149 So. 551; Compton v. Amicable Life Ins. Co., 182 La. 991, 162 So. 751, 105 A.L.R. 1087; Cilluffa v. Monreale Realty Co., Inc., 209 La. 333, 24 So.2d 606; Glassell, Taylor & Robinson v. John W. Harris Associates, Inc., et al., 209 La. 957, 26 So.2d 1.
 

 The first question is whether the allegations of plaintiff’s petition under his main demand for an interpretation of the lease so as to entitle him to an increase in monthly rentals, when considered with the act of lease itself attached to his peti
 
 *990
 
 tion, state a cause of action; or, in other words, whether plaintiff’s petition together with the lease itself shows that he is entitled to receive in rentals a greater amount than defendant has been paying.
 

 The lease itself sets forth that the lessor is the owner of certain property and thereafter describes the property in its entirety, which description does not in any way designate which part of the property is grocery store property and which part filling station property. After so describing the property, the lease provides that the tent ant agrees to pay to lessor for the premises a sum equal to 2 per cent on all sales and business transacted on -said premises during each calendar month, up to, but not to exceed, $22,500, and an . additional 1 per cent on all sales and business transacted on said premises each calendar month in excess of $22,500, it being understood and agreed, however, that the tenant shall pay a minimum annual rental during the term of this lease in the sum of $7,020, payable $585 monthly in advance.
 

 This provision to us is clear and unambiguous, and we find nothing therein which supports plaintiff’s contention that he is to receive a flat monthly rental of $235 from what he terms the “filling station property” in addition to the percentage of the gross sales from the grocery store business with a minimum of $350 a month.
 

 Plaintiff’s- contention, in substance, is that the contract of lease involves two pieces of property contiguous to each other, and that the lease contract shows on its face that there are two separate agreements as to the minimum fixed rental to be paid in advance monthly for the grocery store and the flat monthly rental for the filling station. We cannot agree with this contention, for, to construe the lease as so contended, it would be necessary for us to hold that it is divisible into two parts, one covering the grocery store and the other the filling station. The lease being clear and unambiguous, we do not think it is susceptible of the construction and interpretation placed thereon by plaintiff.
 

 The next question presented is whether plaintiff’s petition, when considered in its entirety, states a cause of action which entitles him to a trial on the question of the reformation of the contract of lease.
 

 The rule with reference to the reformation of a contract applicable to this case is as follows:
 

 “When the instrument is free from any patent or latent ambiguity, parol evidence cannot be received to vary or contradict it.
 

 “Courts of equity, however, have established a special branch of jurisdiction under which, when it is made clearly to appear that through fraud or error the written instrument has been made to express a different purpose from that which the parties had agreed on and intended to embody therein, such mistake may be corrected, and the writing may be reformed to express the real intention of the parties.
 

 
 *992
 
 “But in this, last case both reason and' authority require that before such relief can be afforded there must be very clear proof of the different antecedent agreement, and of the error in committing it to writing.” Ker, Administrator, et al. v. Evershed et al., 41 La.Ann. 15, 6 So. 566, 567.
 

 This rule was followed in Rodgers v. Bolinger Co., Ltd., 149 La. 545, 89 So. 688, and Standard Oil Co. v. Futral et al., 204 La. 215, 15 So.2d 65.
 

 In Hearne v. Marine Ins. Co., 20 Wall. 488, 22 L.Ed. 395, this rule is excellently stated in the following language:
 

 ■ “The reformation of written contracts for fraud or mistake, is an ordinary head of equity jurisdiction. The rules which govern the exercise of this power are founded in good sense and are well settled. Where the agreement as reduced to writing omits or contains terms or stipulations contrary to the common intention of the par- “ ties, the instrument will be corrected so as to-.make it conform to their real intent. The parties-will be placed as they would have .stood if the mistake had not occurred.
 

 “The party alleging the mistake must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. The mistake must be mutual and common to both parties to the instrument. . It must appear that both have done what ‘neither intended. A mistake on one side may be a ground
 
 for
 
 rescinding, but not for reforming, a contract. Where the minds of the parties have not met there is no contract, and hence none to be rectified.”
 

 When this rule is applied to the allegations of plaintiff’s petition, the question is whether plaintiff has alleged that the written contract of lease calls for the payment of rentals in a' lesser amount than that which the parties had agreed on and intended to stipulate and call for therein, or that the contract as reduced to' writing contains terms and stipulations with reference to the payment of rent contrary to the common intention of the parties, and that the error in the written contract with reference to these payments was mutual and common to both parties to the act of lease.
 

 The plaintiff has alleged that the parties to the contract of lease reached a mutual understanding with reference to the amount of rent to be paid for the property, that is, a flat rental of $235 monthly for the filling station property and a percentage of all sales from the grocery store property, and that the flat‘monthly rental, of $235 to be paid for the filling station property was to remain wholly and completely disassociated from the calculation of monthly rentals to be paid for the grocery store property, and that the contract as written does not represent the true and correct agreement or intention of the parties.
 

 These allegations are, in our opinion* sufficient to constitute a cause of action*
 
 *994
 
 However, after considering the entire petition, even if in our minds there should exist any final doubt as to whether the exception should be sustained or overruled, this doubt is resolved in favor of the petitioner and in the overruling of the exception, or, when it is not clear that the petition fails to disclose a cause or right of action, the doubt is resolved in favor of the sufficiency of the petition.
 

 Counsel for defendant-appellee contend that plaintiff has failed to allege sufficient facts to support the existence of an antecedent contract, and state that, in order for him to obtain a reformation of the contract, there must be clear proof of an antecedent contract and of error in committing it to writing, and that for this court to find that an antecedent contract existed in this case, this court must believe that the plaintiff and the defendant intended to be bound under an oral agreement.
 

 To support this contention, counsel rely, upon the expression in Rodgers v. Bolinger Co., Ltd., supra [149 La. 545, 89 So. 690], and authorities therein cited, that “ * * * To support relief there must be clear proof of the antecedent contract and of the error in committing it to writing’’.
 

 As we understand the expression as used in these cases, it did not necessarily mean or contemplate two binding contracts, but meant simply a mutual understanding and agreement reached by the contracting parties which they intended subsequently to reduce to writing, all constituting the one and only contract. The rule correctly stated is that, when the contract written to carry out the mutual understanding and agreement of the parties is contrary to, and not in accordance' with, their understanding, and this error is mutual to both parties, the contract may be reformed to express that understanding.
 

 Appellee contends also that the petition discloses that the error, if any, was a unilateral one, for which reformation of the contract is not a remedy. In our opinion, a careful analysis of the entire petition in connection with the alternative demand for reformation of the contract shows that the petition alleges that there was a mutual agreement and understanding with reference to the amount of rentals to be paid for the property, and that there was error in the contract as written with reference to these amounts, and that this error was mutual to both parties.
 

 It is therefore our opinion that this case should be remanded to the district court so that plaintiff may prove, if he can, his allegations with reference to the reformation of the lease contract involved in this suit.
 

 For the reasons assigned, the judgment sustaining the exception of no cause or right of action filed in this case is reversed, and it is now ordered that said exception be overruled and the case ' remanded to the district court to be proceeded with according to law, and consistently with the views herein expressed; appellee to pay the costs of this appeal, all other costs to await the final determination of this case.