Lester J. BERGERON and Bennett A. Bergeron

v.

AMOCO PRODUCTION COMPANY and Gulf Oil Corporation.

Civ. A. No. 82–1151–B.

United States District Court, M.D. Louisiana.

Nov. 19, 1984.

William S. Strain, Strain, Mayhall, Bates & Palmer, Baton Rouge, La., John Wayne Jewell, Jewell & Jewell, New Roads, La., for plaintiffs.

Tom F. Phillips, J. Clayton Johnson, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for defendants.

POLOZOLA, District Judge.

The issue before the Court in this suit is whether the plaintiffs' undivided interest [1] in property located within the gas rich Tuscaloosa Trend is subject to a mineral lease executed by their deceased mother, Caroline Mix Bergeron. Lester J. Bergeron and Bennett A. Bergeron have filed this action against Amoco Production Company (Amoco) and Gulf Oil Corporation (Gulf) seeking to have the Court declare that their property is not subject to the mineral lease. The defendants, Amoco and Gulf, have filed a counterclaim seeking a declaration that any undivided interest of the plaintiffs not subject to the Caroline Bergeron lease is covered and affected by other mineral leases executed by the plaintiffs contemporaneously with the lease executed by the plaintiffs' mother.

In September of 1976, James Mixon, a lease broker employed by Thomas Durham, contacted Lester Bergeron relative to leasing certain property in Pointe Coupee Parish owned by the Bergeron family. Lester, his brother Bennett, and their mother, Caroline M. Bergeron, agreed to lease all the Pointe Coupee property to Durham. On September 21, 1976, four leases were granted by the Bergerons affecting six contiguous tracts comprising the entire Bergeron property. One lease was executed by Caroline Bergeron alone and purported to lease the entirety of a 40 acre tract [2] in the center of the Bergeron property. Lester and Bennett each executed leases affecting 80 acre tracts owned by them individually, and a fourth lease was jointly executed by Bennett and Lester covering three tracts totalling 250 acres owned by them in indivision. These leases were subsequently assigned to the defendants.

Each of the four leases was prepared by James Mixon on a standard printed form. Included in each lease was a standard warranty clause which provided:

10. Lessor hereby warrants and agrees to defend the title to said land . . . . . If Lessor owns less than the entire undivided interest in all or any portion of the lands or mineral rights relating thereto

1. Plaintiffs own a 2367/2880 interest in the property.

2. This 40 acre tract will be referred to as the "red strip" to coincide with the testimony presented at the trial.

(whether such interest is herein specified or not) rentals and royalties to the land in which an interest is outstanding in others shall be reduced proportionately to the interest of the Lessor therein, but the failure of the Lessee to reduce rentals shall not affect Lessee's rights to reduce royalties; and all outstanding royalty rights shall be deducted from the royalties herein provided for.

Annexed to the form lease was a typewritten addendum prepared by Tom Jewell, the Bergeron's attorney. This addendum contained the following provision modifying the warranty clause.

(c) Lessor's warranty of title to the minerals leased shall be limited to the obligation to return to Lessee any royalties received from the portion of the leased premises to which title shall fail.

Shortly after the leases were signed on October 27, 1976, Caroline Bergeron died. The plaintiffs then discovered that their mother had owned only 513/2880ths of the red strip and that they had acquired the remaining 2367/2880ths in 1954 through their father's succession. In the succession proceedings filed on May 26, 1977, plaintiffs accepted the succession of their mother unconditionally, and a judgment of possession was rendered sending the plaintiffs into possession of their mother's interest in the red strip.

The plaintiffs contend that at the time the red strip lease was executed by their mother, it affected only her interest in the property and not the 2367/2880ths interest which they owned. Both plaintiffs and defendants agree that the plaintiffs assumed any warranty obligations existing under the lease by unconditionally accepting their mother's succession. The parties disagree, however, on the extent of that warranty obligation.

The plaintiffs, relying on the language of the typewritten addendum, contend that their warranty obligation under the lease is limited to a return of royalties received from the portion of the leased property to which their mother did not have title.

The defendants contend that the typewritten addendum modified only the damages provision of the standard warranty clause[3] and that the plaintiffs have assumed their mother's warranty of good title, including her obligations to defend title and maintain peaceable possession. The defendants base this contention on the following: (1) Paragraph 10, the standard warranty clause, was not stricken from the lease; (2) the language of the addendum is similar to the second sentence of Article 120 of the Louisiana Mineral Code, which is solely a limitation of liability; and, (3) the addendum begins with the words "Lessor's warranty of title ...," indicating that a warranty of title does exist.

The defendants first argument, that the failure of the lessor to strike the warranty clause from the form lease indicates an intent to retain full warranty of title, ignores the preamble to the typewritten addendum, which states: "[I]n the event of conflict, said following provisions shall control over any of the printed provisions appearing in said lease." As the warranty clause of the addendum conflicts with Paragraph 10 of the printed form, the deletion of Paragraph 10 was accomplished without physical alteration of the printed form.

The second argument of the defendants is likewise without merit because the language of the second sentence of Article 120 of the Mineral Code and the language of provision (c) of the addendum clearly are not analogous. Article 120 provides for an implied warranty of title unless excluded or limited by the parties. The second sentence of that article, which begins with "The *liability* of the lessor *for breach of warranty is limited* ...,"[4] deals specifically with the amount of damages for breach of warranty where the lease is silent. In contrast, provision (c) of the addendum, which begins *"Lessor's warranty of title* to the minerals leased *shall be*

---

**3.** Paragraph 10 the lease.

**4.** Emphasis supplied by Court.

*limited* ...," [5] is clearly a limitation of warranty, not merely a limitation of liability.

■ Finally, the defendant's assertion that retention of a full warranty is indicated by the language "Lessor's warranty of title" at the beginning of provision (c) takes those words completely out of context. Under Article 1945(3) of the Louisiana Civil Code, the intent of the parties to the contract is to be determined by the words of the contract when they are clear and unambiguous and lead to no absurd consequences. *Battig v. Hartford Accident & Indemnity Co.*, 482 F.Supp. 338 (W.D.La.1977), *affd.* 608 F.2d 119 (5th Cir. 1979). The words of provision (c) of the addendum clearly and unambiguously limit the warranty given by Caroline Bergeron to "the obligation to return to Lessee any royalties received from the portion of the leased premises to which title shall fail." Thus, under Articles 1056 and 1423 of the Louisiana Civil Code, the warranty obligation assumed by the plaintiffs is likewise limited.

■ Since the plaintiffs were not parties to the lease executed by Caroline Bergeron, and since the plaintiffs have no obligation to defend title to the leased property or to maintain peaceful possession in the defendants under that lease, this Court finds that the plaintiffs' 2367/2880ths interest in the 40 acre red strip tract in question is not subject to the lease executed by Caroline Bergeron.

The next issue to be resolved by the Court is whether plaintiffs' interest in the 40 acre red strip tract, which is located in Sections 51 and 123, is subject to other leases executed by the plaintiffs contemporaneously with the Caroline Bergeron lease. Each of the four leases executed by the Bergerons on September 21, 1976, contained the following language, commonly referred to as a "cover all clause," immediately following the property description:

All land owned by the Lessor in the above mentioned Section or Sections or Surveys, ... are included herein, whether properly or specifically described or not. Whether or not any reductions in rentals shall have previously been made, this lease, without further evidence thereof, shall immediately attach to and affect any and all rights, titles, and interests in the above described land, including reversionary mineral rights, hereafter acquired by or inuring to Lessor and Lessor's successors and assigns.

Both the lease jointly executed by Bennett and Lester and the lease executed by Lester individually included tracts located in Sections 51 and 123. The defendants in their counterclaim contend that the 40 acre red strip tract is subject to these other leases granted by the Bergerons in Sections 51 and 123 by virtue of the coverall clause.

The plaintiffs, relying on Texas jurisprudence, argue that coverall clauses generally are disfavored in law and that the sole purpose of such a clause is to add small parcels of land inadvertently omitted from the specific property description. The Texas decisions, however, are based on public policy of the State of Texas discouraging separate ownership of small parcels of land. *Smith v. Allison*, 157 Tex. 220, 301 S.W.2d 608, 615 (1956). This Court is aware of no similar public policy of the State of Louisiana. In the only Louisiana case involving an identical coverall clause, *Melancon v. Melancon*, 199 So.2d 573, 576 (La.App.3d Cir.1967), the court referred to the clause with apparent approval, stating it was inserted for the protection of the lessee should the lessor own additional property adjacent to the property described in the lease. Further, in *Williams v. Bowie Lumber Co.*, 214 La. 750, 38 So.2d 729 (1948), the Louisiana Supreme Court upheld a similar coverall clause. *Williams* involved a deed which particularly described 19 tracts and then stated it also conveyed "all property owned by [the vendor] in the Parish of Lafourche." The court stated that as between the parties to the contract and their privies, a sale of real property by

**5.** Id.

omnibus description is just as effective and binding as though the property were particularly described.

The plaintiffs, citing *United Gas Public Service Co. v. Mitchell*, 188 La. 651, 177 So. 697 (1937), argue that even if the clauses are applicable, they are valid only between the original parties to the lease and cannot affect third parties. In *Mitchell*, the court held a coverall clause inapplicable where the rights of third parties had intervened. Where a third party was the one seeking to sustain the validity of the clause, however, as in this case, the court upheld the clause. *O'Meara v. Broussard*, 162 So.2d 777 (La.App. 1st Cir.1963). The Court finds that the coverall clause contained in the Bergeron leases, which was inserted for the lessee's protection, clearly is valid under the applicable Louisiana law, and the effect thereof is to subject the plaintiffs' 2367/2880ths interest in the 40 acre red strip tract to the other leases granted by the plaintiffs which include tracts located in Sections 51 and 123.

Under Louisiana law, where there is clear and convincing proof of mutual error, either party is always permitted to correct any error in an instrument purporting to evidence the contract, so as to make it truly and correctly express the intention of the parties. *Weber v. H.G. Hill Stores*, 210 La. 977, 29 So.2d 33 (1946), citing *Hearne v. Marine Ins. Co.*, 20 Wall. 488, 87 U.S. 488, 22 L.Ed. 395 (1874); *Phoenix Indemnity Co. v. Marquette Casualty Co.*, 320 F.2d 486 (5th Cir.1963), cert. denied 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 658 (1964). The testimony of Lester and Bennett Bergeron evidences their clear intent to grant a lease to Thomas Durham of any and all interest owned by them in the six tracts involved herein. The testimony of James Mixon further evidences the intent of Thomas Durham, the original lessee, to lease from the Bergerons their entire interest in these tracts. The Court finds the evidence clear and convincing that the 2367/2880ths interest of the Bergeron brothers in the red strip was omitted from the specific property description in the lease executed by the brothers jointly covering all other property owned by them in indivision only due to mutual error on the part of all parties to the instrument. Thus, the Court concludes that the lease Lester Bergeron-Bennett Bergeron should be reformed to reflect the true intent of the parties.

In summary, the Court finds in favor of the plaintiffs on the original complaint and declares that the 2367/2880ths interest of the plaintiffs in the 40 acre red strip tract in question is not subject to the lease executed by Caroline Bergeron. On the defendants' counterclaim, the Court finds in favor of Gulf and Amoco and declares that the lease jointly granted by Lester Bergeron and Bennett Bergeron covering and affecting property owned by them in indivision be reformed to include in the specific property description their 2367/2880ths interest in the 40 acre red strip tract in question.

The parties shall, within fifteen days, prepare and file with the Court a proposed judgment in accordance with this opinion.