471 So.2d 716 (1985)
Goldie Hause KIZER
v.
Fred LILLY, Jr.
No. 84-CC-1509.
Supreme Court of Louisiana.
June 21, 1985.
Dissenting Opinion June 25, 1985.
Rehearing Denied September 9, 1985.
*717 Ronald C. Kizer, Ronald C. Kizer, Jr., Kizer & Kizer, Baton Rouge, Richard Kilbourne, Clinton, for relators.
Ronald G. Coleman, Walton J. Barnes, Law Offices of Walton J. Barnes, Baton Rouge, for respondent.
WATSON, Justice.
Plaintiff, Goldie Hause Kizer, brought this possessory action, alleging possession of a servitude of passage on a twenty foot gravel roadway[1] located on the northwestern boundary of land owned by defendant, Fred Lilly, Jr. According to her petition, the road offered Kizer's estate its "only access to a public highway," Louisiana Highway 412, and Lilly disturbed her use of the servitude by erecting a fence at the junction of the gravel road and Louisiana Highway 412.[2] Kizer began using the servitude in the 1930's and its use by her and her lessees had allegedly been quiet and uninterrupted until defendant's fence was built on May 23, 1984.
The trial court overruled an exception of no cause of action by defendant. The Court of Appeal, First Circuit, granted a writ and ordered that judgment be entered sustaining defendant's exception of no cause of action, citing Broussard v. Booth, *718 446 So.2d 974 (La.App. 3 Cir.1984).[3] A writ was granted to consider the question. 457 So.2d 1 (La., 1984).
LSA-C.C. art. 740 provides:
"Apparent servitudes may be acquired by title, by destination of the owner, or by acquisitive prescription."
The comments under this new article note that it changes the law by allowing prescriptive acquisition of apparent discontinuous servitudes but state that the provision is not retroactive. A right-of-way over a paved roadway was an apparent discontinuous servitude.
Assuming good faith and just title for purposes of the exception, the prescriptive period for the acquisition of an apparent servitude would be ten years. LSA-C.C. art. 742.[4] Professor A.N. Yiannopoulas[5] has discussed the effect of LSA-C.C. art. 740:
"The 1977 revision broadened the availability of acquisitive prescription by dispensing with the requirement of continuity. According to revised article 740 of the Civil Code, apparent servitudes may be created by prescription, even though they may have been considered discontinuous and therefore insusceptible of creation by prescription under the 1870 Code. Thus, in contrast with the 1870 Code, a right of passage exercised over a railroad track, a paved road, or any other construction regarded as an exterior sign of a servitude may be created by prescription. However, article 740 may not be applied retroactively. Therefore, the possession of a servitude that would be discontinuous under the 1870 Code does not give right to prescriptive rights except from the effective date of the new legislation." 43 La.L.Rev. 58, 59.
Under the 1870 Code, the servitude of passage over the gravel road would be an apparent one. LSA-C.C. art. 728.[6] The gravel road would constitute an apparent exterior work. Under the 1870 Code, a servitude of passage is discontinuous. LSA-C.C. art. 727.[7] The distinction between continuous and discontinuous servitudes has been criticized. See Yiannopoulas, supra, at p. 60.[8] It was nonetheless *719 firmly embedded in the Civil Code until the 1977 revision and LSA-C.C. art. 740 is not retroactive.
Plaintiff's possession was disturbed on May 23, 1984, and her possessory action, alleging quiet and uninterrupted possession for the preceding year, comes within the amended codal articles on occupancy and possession effective January 1, 1983. She and her lessees allegedly exercised a servitude of passage, a quasi-possession, on the road for over a year immediately prior to the disturbance. LSA-C.C. art. 3421[9]. According to LSA-C.C. art. 3421, the rules governing possession apply by analogy to the quasi-possession of incorporeals. Thus, the possessory action is available to quasi-possessors.
LSA-C.C. art. 3435[10] provides that discontinuous possession has no legal effect. However, the new codal definition of discontinuous possession is that which is "not exercised at regular intervals." LSA-C.C. art. 3436.[11] Plaintiff's petition alleges that she and her lessees have used the gravel road as access to her land "on a regular basis," i.e., at regular intervals. Therefore, her possession has not been discontinuous.
Plaintiff's petition meets the requirements of a possessory action under LSA-C.C.P. art. 3658 as follows:
"To maintain the possessory action the possessor must allege and prove that:
"(1) He had possession [quasi-possession] of the immovable property or real right therein at the time the disturbance occurred;
"(2) He and his ancestors in title had such possession [quasi-possession] quietly without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
"(3) The disturbance was one in fact or in law, as defined in Article 3659; and
"(4) The possessory action was instituted within a year of the disturbance."
In addition, quasi-possession of a servitude must be exercised "with the intent to have it as one's own."[12] However, there is a presumption that one intends to possess as owner,[13] and intent may be alleged generally, rather than with particularity.[14] See Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.,1984). Intent to own the servitude can be inferred from plaintiff's petition. Louisiana has fact pleadings and it is not necessary to plead the theory of the case in a petition. Any doubt as to the sufficiency of a cause of *720 action should be resolved in favor of petitioner. Weber v. H.G. Hill Stores Co., 210 La. 977, 29 So.2d 33 (1946). Since plaintiff's petition meets the requirements of LSA-C.C.P. art. 3658, the court of appeal erred in sustaining defendant's exception of no cause of action.[15]
Therefore, the judgment of the court of appeal is reversed, the exception of no cause of action is overruled, and the matter is remanded to the trial court for further proceedings according to law.
REVERSED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
MARCUS, J., dissents for reasons assigned by DIXON, C.J.
DIXON, C.J., dissents with reasons.
BLANCHE, J., dissents and will assign reasons.
LEMMON, J., concurring.
The threshold issue is whether the possessor of a servitude which is susceptible of acquisition by acquisitive prescription may acquire the right to be maintained in possession by the passage of a period of more than one year, but less than the period required for acquisitive prescription. A second issue is whether plaintiff alleged sufficient facts to establish that she qualified as a possessor entitled to use the possessory action. Not at issue at this stage of the proceeding, but a problem underlying the determination of the present issues, is the effect and the value of a judgment which the plaintiff receives in a possessory action to maintain possession of a servitude.
Right to Use Possessory Action to Maintain Possession of a Servitude
Implicit in the recognition of the right to acquire an apparent servitude by prescription is the recognition of the right to possess the servitude. The Code of Civil Procedure, since its adoption in 1960, has authorized the possessory action for the possessor of immovable property or of a real right therein. Article 3655. The possession necessary for a possessory action is corporeal possession, which is the exercise of factual authority with the intent to own the thing. Of course, one cannot exercise true corporeal possession of a servitude because one cannot exercise physical control over an incorporeal. Nevertheless, one may exercise a right of servitude by means of material acts and of constructions such as fences, buildings and roads. 2 Yiannopoulos, Louisiana Civil Law TreatiseProperty § 211 (2nd ed. 1980).
The more difficult concept is that of continuous possession which is essential for both acquisitive prescription and possessory protection. Arguably, an apparent servitude is continually possessed when it is *721 used regularly according to the nature of the servitude. See La.C.C. Art. 3436. Professor Yiannopoulos observed:
"Under the 1977 legislation, question may still arise as to the availability of possessory protection of the right to possess a nonapparent servitude or a servitude which under the regime of the Louisiana Civil Code of 1870 would be classified as discontinuous. It is submitted that under the 1977 legislation the possessory action is available for the protection of the right to possess servitudes created by title as well as all servitudes that may be acquired by acquisitive prescription. Thus, apparent servitudes, regardless of their classification as continuous or discontinuous under the prior law, or as affirmative or negative under the 1977 legislation, are susceptible of possession and may be protected by the possessory action. For example, a right of passage evidenced by exterior works may be acquired under the 1977 legislation by ten or thirty years' acquisitive prescription and the owner of the dominant estate may bring the possessory action for the protection of his right to possess such a servitude." 2 Yiannopoulous § 214.
Therefore, a cause of action exists for a possessor of an apparent servitude to protect his right to possess the servitude by means of the possessory action.

Sufficiency of Petition
We granted certiorari principally to decide whether, under any circumstances, a possessor of an apparent servitude may use the possessory action to protect his right to possess the servitude. This is a pure question of law which is properly raised by an exception of no cause of action or a motion for summary judgment. On that issue, the court has ruled unanimously in favor of plaintiff.
The secondary issue involving this particular plaintiff's right to use the possessory action is a mixed question of law and fact which is more appropriately decided by a motion for summary judgment (in which both sides may use affidavits, depositions and other evidence) or by a trial on the merits, rather than by an exception of no cause of action (in which the court is restricted to consideration of the facts alleged in the petition). The problem is further complicated in the present case because the dispute is whether plaintiff sufficiently alleged her intent to possess as owner.
Louisiana's system of pleading facts was preserved by the Code of Civil Procedure. La.C.C.P. Art. 854, comment (a). La.C.C.P. Art. 856 provides that while the circumstances constituting fraud or mistake must be alleged with particularity, malice, intent, knowledge and other condition of mind of a person may be alleged generally.[1]
This court has recently divided sharply over whether Article 856 applies to allegations of intent in intentional tort cases. The majority in Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984), held that a plaintiff's general allegation that he was injured by an intentional act was sufficient to state a cause of action against his employer's executive officer. Justices Marcus and Watson dissented, and I joined them in voting to grant a rehearing. I concluded that the plaintiff, in cases in which intent is the ultimate fact, must allege circumstances which provide a reasonable inference of the existence of the necessary intent or which at least do not suggest the contrary conclusion. I further concluded that the petition did not state a cause of action.
Intent is not the ultimate fact in the present case. Plaintiff's intent to possess as owner is merely an incidental issue to the question of her right to be maintained in possession. In such a case, it would be *722 unworkable to require that all of the evidence bearing on the plaintiff's state of mind be alleged with particularity. It is sufficient to allege intent generally, along with other facts which would enable plaintiff to prevail at trial.[2] Accordingly, I agree that the exception of no cause of action should have been overruled.

The Effect of a Judgment in the Possessory Action
The most difficult problem in this case is that a decision on the narrow issue presented here raises more questions than it answers. The lurking question in the present case involves the effect and the value of the judgment that a plaintiff receives in a possessory action to maintain possession of a servitude.
The possessory action protects only the right to possess the servitude, which is different from the right of servitude itself. The issue of the right of servitude is beyond the scope of a possessory action involving a servitude, just as the issue of ownership or title is beyond the scope of a possessory action involving immovable property. When the plaintiff prevails in a possessory action involving immovable property, he is entitled to be maintained in his possession until another party claims ownership of the immovable property and proves his title thereto. However, when the plaintiff prevails in a possessory action involving a servitude, he is entitled to be maintained in possession until another party claims ownership of the immovable property allegedly burdened by the servitude and proves that he owns the immovable property free of the claimed servitude.
The true effect of a judgment in a possessory action involving a servitudeplacing the burden of proof on the owner to prove no servitude has ever been establishedmay be of little value to the plaintiff in this case. In an action to declare the property free of the claimed servitude, the owner will have to prove that no servitude has been established by title, by destination, or by acquisitive prescription. See La.C.C. Art. 740. In the present case, neither title nor destination is mentioned in the petition, and defendant in brief asserted that there was no acquisition by title or destination. Moreover, there can be no acquisitive prescription in this case, because La.C.C. Art. 740 (which provided for the first time the right to acquire by acquisitive prescription an apparent servitude previously classified as discontinuous) did not become effective until 1978, only six years before this suit was filed.
While these thoughts go beyond the holding of this case, such an analysis was necessary for a conceptual examination of this case's narrow issue in perspective. I have written these inconclusive thoughts for whatever value they may have to the parties in future proceedings.
DIXON, Chief Justice (dissenting).
Under the facts alleged in plaintiff's petition and supplemental pleading, she may avail herself of two avenues for stating a cause of action. First, plaintiff claims that she has acquired a right of quasi-possession of a predial servitude over a gravel road. Second, she apparently contends that her estate is enclosed and therefore she is entitled to a legal right of passage over the gravel roadway. Under either of these theories plaintiff has failed to state a cause of action; therefore the decision of the court of appeal should be affirmed.

QUASI-POSSESSION OF A RIGHT OF PASSAGE
The basic requisites for a possessory action are stated in Article 3658 of the Code of Civil Procedure. In order to acquire the right of possession which is necessary to bring a possessory action, the possessor must intend to be the owner of the real right which he claims. C.C. 3424. According to Professor Yiannopoulas, in order to maintain a possessory action, the possession must manifest "the factual authority over a thing with the intent to own it." 2 La.Civ.Law Treat. (Yiannopoulas) 2d Edition § 211 at page 564. Under Article 3424, the possessor attempting to bring a *723 possessory action is required to show a clear and unequivocal intent to use the property or the real right as his own. The decisions of the courts of appeal are in accord with this interpretation of C.C. 3424. Cf. Humble v. Dewey, 215 So.2d 378 (La. App. 3d Cir.1968); McCoy v. Toms, 384 So.2d 518 (La.App. 2d Cir.1980); William T. Burton Industries, Inc. v. McDonald, 346 So.2d 1333 (La.App. 3d Cir.1977). See, for example, Thevenet v. Clause, 302 So.2d 649 (La.App. 3d Cir.1974), discussed in 49 Tul.L.Rev. 1173, 1178:
"... Regardless of a party's subjective intent, he will not be allowed to maintain a possessory action unless he clearly manifested his intent to possess as owner through his acts of possession. This result advances the objective of not permitting a precarious possessor to bring a possessory action and further insulates the true owner from the danger of being prescribed against without his knowledge."
In her petition, plaintiff alleges that she possessed a predial servitude on a gravel road which paralleled the boundary of Fred Lilly's property, for one year prior to the disturbance. Her possessory allegations are based on her contention that she and her lessees regularly used the road for ingress and egress to her property. Nowhere in her petition or supplemental petition does plaintiff allege facts which indicate that she or her lessees intended to acquire a predial servitude over the roadway. Plaintiff's mere intermittent passage over the gravel road without more, is not sufficient to show an intent to become owner of a real right to use the road. Plaintiff's alleged acts of possession were equivocal in nature and did not express an intent to own a right of passage. Such acts are without legal effect. C.C. 3435, 3436.

LEGAL SERVITUDE OF PASSAGE
Although plaintiff does not specifically claim a legal servitude of passage, she may be entitled to such a right if she could show that her estate was without access to any public road. This right of passage for enclosed estates is provided for in C.C. 689, et seq. Article 689 provides for a legal servitude over neighboring estates to the closest road. Under C.C. 692, "[t]he owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands."
In her supplemental petition, plaintiff alleges that the road "constitutes the only access to and from a public highway, namely, Louisiana Highway No. 412." (Paragraph IV of the Supplemental and Amending Petition). In her description of her estate, plaintiff states that her estate "now or formerly" was bounded to the south by a public road. She alleges that this road became impassable during the 1930s and has remained in that condition.
Although plaintiff alleges that her estate is enclosed, she has failed to allege, as required by C.C. 692, that the gravel road is the shortest and least injurious route from her estate to Highway 412 or any other public road. In order to show an entitlement to a legal servitude of passage over that road, plaintiff must allege and prove that the gravel road furnishes her with the most feasible route in terms of length, directness and injury to intervening lands. C.C. 692; State v. Joseph, 256 La. 627, 237 So.2d 663 (1970). She has failed to plead facts which show that the gravel road would be the proper location for a legal servitude of passage.
For the foregoing reasons, I respectfully dissent. Defendant's exception of no cause of action should be sustained and the plaintiff should be given time to amend her petition to state a cause of action.
BLANCHE, Justice (dissenting).
Plaintiff does not allege any fact that her possession of the right of passage over the defendant's land is that of owner, either by title, destination of the owner, or by acquisitive prescription. If she claims the right of passage through destination of the owner, I agree with the Chief Justice's dissent that she has not alleged any facts so as to *724 state a cause of action and should be given leave to amend.
On the other hand, if plaintiff claims his right of passage through acquisitive prescription, her suit must surely be dismissed because it would be impossible for her to possess such a right as owner. Prior to the amendment to C.C. art. 740, an apparent servitude classified as discontinuous as in the case before us could not have been acquired through acquisitive prescription. Since the 1978 amendment apparent servitudes, whether continuous or discontinuous, can be acquired by 10 and 30 year prescription. La.C.C. art. 742. However, since only 6 years have elapsed from the 1978 amendment to the filing of this suit, no servitude of passage exists and the plaintiff therefore cannot claim to possess as owner that which does not even exist.
Plaintiff has been given one chance to amend to state a cause of action by the trial court and has again failed to state a cause of action. Nevertheless, I would not object to giving the plaintiff another chance to amend.
For the above and foregoing reasons, I respectfully dissent.
NOTES
[1] The roadway's description is as follows:

"A parcel of land located in Section 5, T4S R1E and being twenty feet (20') in width and running northeasterly from the north boundary of Louisiana Highway No. 412 and along and parallel to the northwesterly boundary of property of Fred Lilly, Jr. for a distance of 586.6 feet and continuing northeasterly from the northernmost corner of property of Lilly for a distance of approximately 900 feet to the property or land of Goldie H. Kizer hereinafter described." (Tr. 17)
[2] Kizer's property is described as:

"276 ¾ acres of land, more or less, situated in Section 5, T4S R1E, Parish of East Feliciana, State of Louisiana, and bounded, now or formerly, as follows: North by B.F. Appleby; East By A.C. Watson; south by A.C. Watson and public road and west by Mrs. C. Appleby." (Tr. 18)
[3] Broussard v. Booth is not in point.
[4] LSA-C.C. art. 742 provides:

"The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith."
[5] W.R. Irby Professor of Law, Tulane University.
[6] Prior to its amendment, LSA-C.C. art. 728 read as follows:

"Again, servitudes are either visible and apparent or nonapparent.
"Apparent servitudes are such as are to be perceivable by exterior works; such as a door, a window, an aqueduct.
"Non-apparent servitudes are such as have no exterior sign of their existence; such, for instance, as the prohibition of building on an estate, or of building above a particular height."
[7] Prior to its amendment, LSA-C.C. art. 727 read as follows:

"Servitudes are either continuous or discontinuous.
"Continuous servitudes are those whose use is or may be continual without the act of man.
"Such are aqueducts, drain, view and the like.
"Discontinuous servitudes are such as need the act of man to be exercised.
"Such are the rights of passage, of drawing water, pasture and the like."
[8] "The requirement that the servitude be continuous is even less justifiable. According to the medieval scholars, discontinuous servitudes could not be created by prescription because such servitudes were considered to be insusceptible of continuous possession, a requirement for acquisitive prescription. However, modern writers have discarded this explanation as theoretically faulty. As a matter of fact, for purposes of acquisitive prescription, discontinuous servitudes are as much susceptible of continuous possession as corporeal immovables. Thus, the regular use of a servitude for the drawing of water is as much a continuous possession of the servitude as possession of the body of water itself and the regular use of a servitude of passage is as much a continuous possession of the right of way as adverse possession of the strip of land itself."

"Certain authors later proposed another explanation for the requirement that the servitude be continuous. Discontinuous servitudes may not be created by prescription because they are used by means of isolated acts that are insufficient to give notice to the owner of the would-be servient estate; therefore, such acts must be regarded as tolerated in the spirit of good neighborhood. This explanation is equally unacceptable, because it is based on the unrealistic presumption that in the absence of title, the possession of a discontinuous servitude is necessarily precarious." 43 La.L.Rev. at p. 60.
[9] LSA-C.C. art. 3421 provides:

"Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name.
"The exercise of a real right, such as a servitude, with the intent to have it as one's own is quasi-possession. The rules governing possession apply by analogy to the quasi-possession of incorporeals."
[10] LSA-C.C. art. 3435 provides:

"Possession that is violent, clandestine, discontinuous, or equivocal has no legal effect."
[11] LSA-C.C. art. 3436 provides:

"Possession is violent when it is acquired or maintained by violent acts. When the violence ceases, the possession ceased to be violent.
"Possession is clandestine, when it is not open or public, discontinuous when it is not exercised at regular intervals, and equivocal when there is ambiguity as to the intent of the possessor to own the thing."
[12] LSA-C.C. art. 3421, supra.
[13] LSA-C.C. art. 3427 provides:

"One is presumed to intend to possess as owner unless he began to possess in the name of and for another."
[14] LSA-C.C.P. art. 856 provides:

"In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally."
[15] Plaintiff's petition could also be read as a claim by the owner of an enclosed estate for a right of passage over neighboring property. "Said land formerly bordered on and had access to a public road, namely, the old Slaughter-Oliver Branch public road. This road was abandoned in about 1925 when a new gravel road, which is now Louisiana Highway 412, was constructed between Slaughter and Olive Branch, by-passing plaintiff's above described land and leaving same with no access to the new public road except over the old, abandoned road which was used for access by plaintiff to and from her property until it became impassable in the 1930s at which time The Property, located on land of the Watson Estate just west of and parallel to the old road, began being used for access to and from plaintiff's above described land, located north of the new road (now Highway 412) by plaintiff and various lessees of said land, ..." (Tr. 18)

"The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion." LSA-C.C. art. 689.
"The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate." LSA-C.C. art. 690.
"The owner of the enclosed estate may construct on the right of way the type of road or railroad reasonably necessary for the exercise of the servitude." LSA-C.C. art. 691.
"The owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands." LSA-C.C. art. 692.
[1] The source of Article 856 is Fed.R.Civ.P. 9(b). Fraud and mistake involve such a wide variety of potential conduct that particularized information is required to prepare a response, even in the federal system. However, pleading of a condition of mind falls within the general requirement of a "short and plain statement of the claim" under Fed.R.Civ.P. 8(a), even for such conditions as fraudulent intent. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1301 (1969).
[2] Intent to possess as owner is presumed. La. C.C. Art. 3427